STATE of Tennessee, Appellee,

v.

**Robert HUNTER, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Oct. 25, 1995.

Permission to Appeal Denied April 8, 1996.

Jeffrey A. DeVasher, Senior Asst. Public Defender (on appeal), Ross Alderman, Deputy Public Defender, Nashville (at trial), for Appellant.

Charles W. Burson, Attorney General, Hunt S. Brown, Asst. Attorney General, Lila Statom, Asst. District Attorney General, Nashville, for Appellee.

## OPINION

WADE, Judge.

The defendant, Robert Hunter, was convicted of six counts of aggravated rape and three counts of rape. The trial court imposed an effective sentence of 100 years. The nine charges against the defendant were resolved as follows:

| Count | Offense | Sentence |
| --- | --- | --- |
| One | Aggravated Rape | 20 Years |
| Two | Aggravated Rape | 20 Years |
| Three | Aggravated Rape | 20 Years |
| Five | Aggravated Rape | 20 Years |
| Six | Aggravated Rape | 20 Years |
| Seven | Aggravated Rape | 20 Years |
| Eight | Rape | 10 Years |
| Ten | Rape | 10 Years |
| Eleven | Rape | 10 Years |

Counts 1 and 2 are to be served concurrently but consecutive to count 3 (20 + 20 = 40); counts 5 and 6 are concurrent with each other but consecutive to count 3 (40 + 20 = 60); count 7 is consecutive to counts 5 and 6 (60 + 20 = 80); counts 8 and 10 are concurrent with each other but consecutive to count 7 (80 + 10 = 90); and count 11 is consecutive to counts 8 and 10 (90 + 10 = 100).

In this appeal, the defendant presents two issues for our review:

(1) whether the trial court erred in allowing a nurse practitioner to testify pursuant to Tenn.R.Evid. 803(4); and

(2) whether the trial court properly sentenced the defendant.

We affirm the judgment.

The defendant is the natural father of TH and the stepfather of MJ.[1] TH, age 14 at the time of trial, testified that the defendant digitally penetrated her vagina on three separate occasions. MJ, age 16 at the time of trial, testified that the defendant raped her

on numerous occasions during her childhood. Genetic testing established a probability of over 99% that the defendant was the father of MJ's two children.

## I

The defendant first claims that the trial court erred by allowing nurse practitioner Sue Ross to testify under the "diagnosis and treatment" exception to the hearsay rule. He asserts that the exception does not apply to statements made to non-physicians.

Ms. Ross testified that she examined the victims at the Our Kids Clinic, an outpatient facility of General Hospital for sexually abused children. She testified that the following information was taken by a social worker as TH's medical history:

> She was eleven years old. [She] stated that she had come into the clinic for a check-up. She had been explained that she was there because of what her daddy did to her. And went on to say that he first touched her with his finger in her vagina (private) at about age eight or nine years. It happened lots of times. It happened in his bedroom while they lived in the projects. The first—she first disclosed to her sister, [MJ]. She denied any penile penetration and she further denied any sexual activity with any peers.

An exception to the rule against hearsay is set out in Tenn.R.Evid. 803(4):

> Statements made for purposes of medical diagnosis and treatment describing medical history; past or present symptoms, pain, or sensations; or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis and treatment.

In *State v. Livingston*, 907 S.W.2d 392 (Tenn. 1995), our supreme court held as follows:

> The rationale for the medical diagnosis and treatment hearsay exception is that such declarations are deemed reliable because the declarant is motivated to tell the truth; that is, the declarant makes the statements for the ultimate purpose of re-

---

1. Pursuant to the policy of this court, the minor victims will not be referred to by name.

ceiving proper diagnosis and treatment. Generally, (1) the statement must be made for medical diagnosis *and* treatment; (2) the statement may include extensive information about symptoms, pain, or sensation; and (3) the statement is admissible only "insofar as reasonably pertinent to diagnosis and treatment."

907 S.W.2d at 396 (emphasis in original) (citing N. Cohen et al., Tennessee Law of Evidence §§ 803(4).1–803(4).4 (2d ed. 1990)); *see also State v. Rucker*, 847 S.W.2d 512, 516 (Tenn.Crim.App.1992). Statements identifying the sex abuser may be pertinent to diagnosis and treatment when the abuser, as here, is a member of the victim's household.

The defendant argues that *State v. Barone*, 852 S.W.2d 216 (Tenn.1993), "stands for the proposition that only treating physicians can testify to hearsay statements elicited for purposes of medical diagnosis and treatment." He claims that nurse practitioners in Tennessee have only limited power to prescribe and/or issue noncontrolled legend drugs and that there is no licensure authority for a nurse practitioner to make medical diagnosis. The defendant asserts that under these circumstances the hearsay exception under Rule 803(4) does not apply to statements given to non-physicians.

We disagree. The "medical diagnosis and treatment" hearsay exception, as discussed in *Barone*, limited the nature of the evidence to physical complaints rather than those of a mental or emotional nature. Thus, a psychologist was not permitted to testify to the history of sex abuse provided by his patient. The focus, however, was not so much upon who received the statements as to why they were given. *See Livingston* and *Rucker, supra; see also State v. Joe Andre Williams*, 920 S.W.2d 247 (Tenn.Crim.App.1995). Because physical complaints could be more easily verified through empirical testing, they were deemed trustworthy; the effectiveness of the treatment depended in great measure upon the accuracy of the history provided. The court in *Barone* concluded that the patient was not as likely to understand that in the "psychological setting." 852 S.W.2d at 220.

Here, Ms. Ross testified that the clinic's policy was for the social worker to take the medical history from the victim. The physicians and the medical staff then utilized the information to help formulate a course of treatment. Ms. Ross testified that the medical history of TH was useful in the examination of TH and in making "a diagnosis or an assessment . . . as to what treatment [would] be necessary." She stated that the history assisted in "know[ing] what injuries to look for."

Although not specifically presented as an issue, the medical history of TH qualified as hearsay within hearsay. Under Rule 805 of the Tennessee Rules of Evidence, "[h]earsay within hearsay is not excluded if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules or otherwise by law." Here, the statements made to the social worker in taking the medical history were admissible under the "business records" exception to the hearsay rule. Tenn.R.Evid. 803(6); Tenn.R.Evid. 805, Advisory Commission Comments; *see also State v. Rucker*, 847 S.W.2d at 516. The only question remaining, therefore, is whether TH's statements qualified within the "medical diagnosis and treatment" exception. To meet the requirements set out in *Livingston*, the statements must have (1) been made for the purpose of diagnosis and treatment; (2) included information about things such as the cause of her injury, the place of her injury, or the frequency of the injury; and (3) been reasonably pertinent to diagnosis and treatment. In our view, those standards have been met in this case. The statement was made to a social worker at Our Kids Clinic in preparation for a medical examination, which was the general practice at the facility. The nurse testified that the medical staff, which included nurse practitioners, a physician/medical director, residents, and interns, relied upon this information in examining, diagnosing, and treating patients such as the victims here. The age of the child, the nature and degree of the sexual contact, and the identity of the defendant, because he lived in the same household, were pertinent considerations. The victims were mature enough to understand that the quality of treatment de-

pended upon the accuracy of their medical history. Thus, the trial court did not err by allowing Ms. Ross to provide the medical history of TH.

## II

Next, the defendant claims that the sentences imposed were excessive because the trial court erroneously applied certain of the enhancement factors. He also claims that the imposition of consecutive sentencing was improper.

■ When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review with a presumption that the determinations made by the trial court are correct. Tenn.Code Ann. § 40–35–401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn.1991); *see State v. Jones*, 883 S.W.2d 597 (Tenn.1994). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

■ Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn.Code Ann. §§ 40–35–102, –103, and –210; *State v. Smith*, 735 S.W.2d 859, 863 (Tenn.Crim.App.1987).

In calculating the sentence on a felony conviction, the presumptive sentence is the minimum within the range if there are no enhancement or mitigating factors. Tenn.Code Ann. § 40–35–210(c). *But see* 1995 Tenn.Pub.Acts ch. 493 (amending the statute effective July 1, 1995, to make the presumptive sentence in a class A felony the midpoint in the range). If there are enhancement factors but no mitigating factors, the trial court may set the sentence above the minimum. Tenn.Code Ann. § 40–35–210(d). A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. Tenn.Code Ann. § 40–35–210. The sentence may then be reduced within the range by any weight assigned to the mitigating factors present. *Id.*

The trial court found that several enhancement factors applied to each of the convictions. On every offense, the trial court found that the personal injuries inflicted upon the victims were particularly great and that the defendant violated a position of private trust. Tenn.Code Ann. § 40–35–114(6) and (15). As to the rape convictions, the trial court found that the victim MJ was particularly vulnerable because of age or physical or mental disability. Tenn.Code Ann. § 40–35–114(4). As to the aggravated rape convictions, the trial court found that the defendant had a prior criminal history or behavior in addition to that necessary to establish the appropriate range. Tenn.Code Ann. § 40–35–114(1). In mitigation, the trial judge gave "little weight" to his finding that "technically" the defendant's conduct neither caused nor threatened bodily injury; he also acknowledged that the defendant lacked any prior criminal record of convictions. Tenn.Code Ann. § 40–35–113(1) and (13).

The defendant first claims that the trial court erred by finding as to the aggravated rape convictions, a "prior history of criminal ... behavior in addition to that necessary to establish the appropriate range." Tenn.Code Ann. § 40–35–114(1). He contends that the court may not rely upon testimony from one of the victims concerning acts of sexual abuse "well beyond the indicted charges" to establish a history of criminal behavior. The defendant cites *State v. William Shelton*, No. 03C01–9106–CR–00179 (Tenn.Crim.App., at Knoxville, Feb. 28, 1992), *aff'd in part and rev'd in part*, 851 S.W.2d 134 (Tenn.1993), in support of his challenge.

■ In *Shelton*, this court modified the defendant's sentence based upon what it believed were improper enhancement factors; one of the factors held inapplicable was prior

criminal behavior based upon other unindicted acts of sexual misconduct. On appeal, however, our supreme court reinstated the original sentence without any discussion. We infer from that action approval of the enhancement factor; thus, the defendant's reliance on *Shelton* is misplaced. In a more recent case, our court ruled that a defendant's prior criminal behavior may include evidence of sexual crimes committed but not prosecuted. *State v. James L. Stevens*, No. 01C01–9304–CC–00164, 1994 WL 684613 (Tenn.Crim.App., at Nashville, December 8, 1994), *perm. to appeal denied*, (Tenn.1995). Because, in this case, MJ testified that she had been sexually abused as often as twice a week, the record supports the application of this factor to each of the offenses.

■ The defendant next claims that there was no evidence that 14–year–old MJ was *particularly* vulnerable due to age or any other disability as required by the language of the statute. Tenn.Code Ann. § 40–35–114(4). In *State v. Adams*, 864 S.W.2d 31, 34–35 (Tenn.1993), our supreme court ruled that the state had the burden of proving vulnerability and that age alone would not be sufficient to establish that factor. Here, there was no additional proof to support the application of this factor to the defendant's rape convictions. Thus, the factor was erroneously applied.

The defendant also contends that the trial court erred by finding that the victims suffered particularly great injuries. The defendant specifically argues (1) that the factor should not apply to the "emotional trauma inherent in any child sexual abuse case," and (2) that if emotional injuries do apply, the state failed to prove any "particularly great" physical or emotional injury in this instance. *See* Tenn.Code Ann. § 40–35–114(6). We disagree.

■ Initially, factor (6) may apply to psychological injuries. *E.g., State v. Smith*, 891 S.W.2d 922 (Tenn.Crim.App.1994). Moreover, this court has held that this factor would apply as a physical injury where, as here, there is evidence of an unwanted pregnancy. *State v. Jones*, 889 S.W.2d 225, 231 (Tenn.Crim.App.1994). There was also testimony that MJ had been "distrustful," "very

depressed," and periodically suicidal. A therapist testified that MJ would probably need therapy "off and on for most of her adult life" and would likely have some problems in parenting. A second therapist described TH as being "very troubled, very angry, very down, [in a] very depressive kind of state" and as "a very sad child." She diagnosed TH as having post-traumatic stress disorder and depressive disorder as a result of the offenses. Because there was evidence of psychological injuries to both the victims and physical injuries to MJ, we agree that this factor applies to each offense. Further, based upon our finding of *physical* injuries to MJ, we find that the trial court erred by finding that the defendant was entitled to even slight mitigation because his conduct neither caused nor threatened any serious bodily injury in the offenses against MJ. Tenn.Code Ann. § 40–35–113(1).

■ The defendant received midrange sentences on each of his convictions. Three enhancement factors are applicable to each of the convictions. In our view, any evidence of mitigation was entitled to slight weight at best. Thus the record supports the specific midrange sentences imposed for each of the offenses.

Lastly, the defendant challenges the propriety of partial, consecutive sentencing. Again, we concur with the trial court. Prior to the enactment of the Criminal Sentencing Reform Act of 1989, the limited classifications for the imposition of consecutive sentences were set out in *Gray v. State*, 538 S.W.2d 391, 393 (Tenn.1976). In that case, our supreme court ruled that aggravating circumstances must be present before placement in any one of the classifications. Later, in *State v. Taylor*, 739 S.W.2d 227 (Tenn. 1987), the court established an additional category for those defendants convicted of two or more statutory offenses involving sexual abuse of minors. There were, however, additional words of caution:

[C]onsecutive sentences should not be routinely imposed ... and ... the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved.

739 S.W.2d at 230. The Sentencing Commission Comments adopted the cautionary language. Tenn.Code Ann. § 40–35–115. The 1989 Act is, in essence, the codification of the holdings in *Gray* and *Taylor*; consecutive sentences may be imposed in the discretion of the trial court only upon a determination that one or more of the following criteria [2] exist:

(1) The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Tenn.Code Ann. § 40–35–115(b).

■ Here, there were multiple offenses involving sexual abuse of a minor. These offenses, when considered in light of all the surrounding circumstances, clearly support the imposition of some consecutive sentencing under Tenn.Code Ann. § 40–35–115(5). The defendant, however, cites *State v. Raymond Martinie, III,* No. 01C01–9004–CC–00102, 1991 WL 155711 (Tenn.Crim.App., at Nashville, Aug. 16, 1991), for the proposition that the extent of the consecutive sentencing imposed was improper. He asserts that the facts here are very similar to those in *Martinie* and that the trial court should have ordered all sentences as to each victim concurrent and then ordered the concurrent sentences on each victim to be served consecutively. Had the trial court done so, the effective sentence would have been 40 years rather than 100. The defendant argues that a 40–year sentence would have adequately protected the public from any further criminal acts. *See Gray v. State, supra.*

We would point out, however, several significant differences between *Martinie* and this case. In *Martinie,* the defendant was characterized as "a model citizen ... from all outward appearances"; he admitted his guilt, exhibited remorse, and fully "accepted the responsibility for all the problems and damage created by [his offenses]." The state commended the defendant as "very open and very candid." There was no evidence of threats having been made or physical harm done to the victims.

Here, MJ testified to the ongoing nature of the offenses and how it was often used as a form of "punishment." There was also evidence in the presentence report of physical abuse of the victims. The defendant's misconduct continued after the Department of Human Services had begun its investigation. The defendant failed to demonstrate remorse or otherwise acknowledge any degree of responsibility for his actions. The defendant fathered two children by the minor victim MJ. The impact on those additional victims to these crimes is immeasurable. Certainly these crimes were aggravated. The aggre-

---

2. The first four criteria are found in *Gray.* A fifth category in *Gray,* based on a specific number of prior felony convictions, may enhance the sentence range but is no longer a listed criterion. *See* Tenn.Code Ann. § 40–35–115, Sentencing Commission Comments.

gate length of the sentences was warranted by the severity of the offenses. Because the defendant has failed to exhibit amenability towards rehabilitation, the public may require a lengthy period of protection from possible future misconduct. *See State v. Wilkerson,* 905 S.W.2d 933 (Tenn.1995). Under all these circumstances, the imposition of consecutive sentences is justified.

Accordingly, the judgment is affirmed.

WELLES, J., and WILLIAM S. RUSSELL, Special Judge, concur.