IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

APRIL 1997 SESSION

FILED

September 23, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. No. 03C01-9606-CR-00241 |
| | ) | |
| Appellee, | ) | HAMILTON COUNTY |
| | ) | |
| VS. | ) | **HON. DOUGLAS A. MEYER, JUDGE** |
| | ) | |
| CHARLES STEVE MILLER, | ) | (Facilitation of Murder 2nd, |
| | ) | Abuse of Corpse) |
| Appellant. | ) | |

FOR THE APPELLANT:

**JERRY S. SLOAN**
730 Cherry Street, Suite C
Chattanooga, TN 37402

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General and Reporter

**MERRILYN FEIRMAN**
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

**WILLIAM H. COX, III**
District Attorney General

**DAVID DENNY**
Assistant District Attorney General
600 Market Street
Chattanooga, TN 37402

OPINION FILED: _____

**AFFIRMED**

**CHRIS CRAFT,**
**SPECIAL JUDGE**

**O P I N I O N**

The defendant, Charles Steve Miller, appeals as of right from a sentence imposed by the Hamilton County Criminal Court after his guilty plea to Facilitation of Murder Second Degree. He received a 10 year sentence to be served in the custody of the Department of Correction. The defendant contends that 1) his sentence was excessive, and 2) that he should have been granted an alternative sentence to confinement. We affirm the judgment of the trial court.

The defendant was indicted for Murder Second Degree,[1] a Class A felony, and Abuse of a Corpse, a Class E felony. Pursuant to a plea agreement, the defendant entered a guilty plea to the lesser included offense of Facilitation of Murder Second Degree, a Class B felony, as a Range One, Standard Offender, leaving the determination of punishment, which would fall between 8 and 12 years, to the trial court. He also pled guilty to Abuse of a Corpse, agreeing to a 2 year sentence, to be served concurrently with the sentence he would ultimately receive on his more serious charge. When an appeal challenges the length, range, or manner of service of a sentence, this Court conducts a de novo review with a presumption that the determination of the trial court was correct. T. C. A. § 40-35-401(d). However, the presumption of correctness is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In the event that the record fails to demonstrate such consideration, review of the sentence is purely de novo. In this review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103 and -210; see Ashby, 823

---

[1] In 1990, the legislature amended T.C.A. § 39-13-210, adding § 39-13-210(a)(2), which additionally defines Murder 2nd Degree as a "reckless killing of another which results from the unlawful distribution of any Schedule I or Schedule II drug when such drug is the proximate cause of the death of the user." The drug which caused the death of the victim in this case was cocaine, a Schedule II drug.

S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236-37 (Tenn. 1986).

The facts of defendant's offense are uncontroverted. He had known the victim, Phyllis Miller, from 1966 until her death in 1993. They had dated off and on, were married in 1974, divorced in 1984, and then after the divorce continued to live together up until the time of the victim's death, even though having no further sexual relationship. Their living together appeared to be for financial and drug-related purposes only, as the victim had a date planned with another man the night of her death. From the time of their marriage they both used illegal drugs on a weekly basis. She used cocaine and he used PCP, in his words, until it "just about got where you couldn't find it," and then he switched to cocaine as well. The two of them would inject cocaine "just about every weekend." The weekend of her death, the defendant testified that

> [I]t started on Thursday, and we'd been doing some Thursday night. She had to go to work Friday, and she did.... And then during the day, she'd get a break and I'd go over and meet her and she'd do some more.
>     And that afternoon when she got off of work, we went straight from her job down to where we pick our drugs up and bought some more, and we went home...and we did one when we got home, each of us, and then we was doing another one and she was fixing to take a shower...and all of a sudden, she just laid back."

The defendant removed her from the bathtub, placed her on the bed, and tried to revive her for about 45 minutes, to no avail. There is no proof in the record he ever attempted to call for emergency medical help during this time. He left her body on the bed from that Friday afternoon until sundown Saturday, at which time he placed it in the hatchback of his car, intending to dispose of it secretly. He continued to use cocaine that Friday and Saturday. He also made a trip back to the drug house where they had bought their weekend cocaine during this time, and kept up a pretense with the victim's family that all was well. When he ran out of cocaine Sunday morning, he finally called her family and the police, still "high" by his own admission when he talked to the police about what had happened. He at first gave the police a detailed fabrication about how the victim had died at another location, and that one of her friends had called him to come pick up her body, which he had then placed in his car. When he realized the police did not believe him, he then told them the truth about the

3

circumstances surrounding her death.

The presentence report reveals that the defendant has a criminal record of substance abuse going back to 1974, when he was convicted of glue sniffing and marijuana possession. His convictions include cocaine possession, multiple DUI convictions, and possession of drug paraphernalia. His only felony conviction was for Felonious Operation of a Motor Vehicle, for which he received one year in the workhouse. He had also been placed on a community corrections program in 1994. He has a high school degree and some college, dropping out when his wife became pregnant. At the time of his sentencing hearing, he was unemployed, even though his former employer stated it would be glad to have him return to work, despite his past drug use. He currently lived in a free apartment with another woman who was on disability. The defendant admitted that he had been using cocaine for 25 years, having received treatment for his addiction three times at Moccasin Bend. He claimed to have stopped using cocaine on his own in May, 1995, about 22 months after the victim's death, 7 months prior to the hearing. The defendant was on probation at the time of the commission of the offense.

The trial court imposed a 10 year sentence in the Department of Correction, finding three enhancement factors: 1) that the defendant had a previous history of criminal convictions or criminal behavior in additional to those necessary to establish the appropriate range,[2] 2) that the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement,[3] and 3) that the felony was committed while the defendant was on probation.[4]

That the defendant has a previous history of criminal convictions or criminal behavior is amply supported by the record. The presentence report showed eleven prior misdemeanor convictions, primarily for drug or alcohol abuse, and one felony driving conviction. Although not mentioned by the trial court, this Court can and does

---

[2] T.C.A. § 40-35-114(1)

[3] T.C.A. § 40-35-114(7)

[4] T.C.A. § 40-35-114(13)(C)

also consider the constant abuse of cocaine or PCP and other substances over the last 25 years as "criminal behavior," even when no criminal convictions have resulted from such behavior. State v. Hunter, 926 S.W.2d 744, 748-749 (Tenn. Crim. App. 1995).

That this offense was committed to gratify the defendant's pleasure is borne out by the defendant's testimony in the hearing as to their long partnership in drug use, and his statement to the police about their using drugs together to ensure their safety. He stated in his confession, when asked if he used cocaine while the victim took her last "hit" before she died, that "I didn't right then. I let her do hers. I like to watch her. I don't want to be skeetso if something happens." She, likewise, would watch him when he "did his." Defendant admits in his brief that the type of relationship that he and the victim had "was one where they both procured and shared drugs obtained from a street dealer." The unlawful distribution of cocaine resulting in the victim's death therefore was committed for their mutual pleasure, in the context of the facts of this case. Although the trial court found that the defendant seemed to get pleasure from watching her use drugs, for which there is little proof in the record, it is clear that the defendant's obtaining drugs for their mutual use aided his use of drugs, and was therefore committed to gratify his desire for the pleasure of his own drug use, as well as hers.

The trial court's finding as an enhancement factor that the defendant was on probation at the time of the offense was error. T.C.A. § 40-35-114(13) provides that it is an enhancement factor if the felony was committed while on "any of the following forms of release status," listing probation in subsection (c) as one qualifying form of release status, only "if such release status is from a prior felony conviction." The presentence report shows that although the defendant was on probation, it was for a misdemeanor offense, not a felony. Therefore, this factor cannot be used to enhance defendant's sentence. However, because the record shows that defendant bought, delivered to the victim, and used cocaine repeatedly while on probation, this Court finds an additional enhancement factor, that the defendant "has a previous history of unwillingness to comply with the conditions of a sentence involving release into the

5

community,"[5] due to his constant purchase and use of illegal drugs while on probation.

The trial court also found three mitigating factors: 1) that the defendant played a minor role in the commission of the offense,[6] 2) that he assisted the authorities in apprehending other persons who had committed the offense,[7] and 3) that there were unusual circumstances surrounding the death of the victim, the trial court stating therefore that "maybe that was not a sustained intent to violate the law."[8] Each mitigating circumstance the court found "somewhat," which this Court takes to mean that although the trial court found the mitigating factors to exist, it gave them little weight. From the record before us, the trial court was very generous to the defendant in giving these three factors any weight at all. The defendant admitted to preparing one of the "hits" of cocaine the victim took the afternoon she died, and in fact took her to buy the cocaine, and took her cocaine to use while she was at work the day she died, which would hardly qualify as a "minor role." The defendant was convicted of Facilitation,[9] defined as knowingly furnishing substantial assistance in the commission of the felony, although lacking the necessary intent to be criminally responsible for the felony itself. He clearly had a major role in furnishing this assistance, even though not intending the death of the victim. Also, although the defendant eventually "assisted the authorities" by telling the authorities who the person was who sold him the cocaine, and admitting to what he himself had done, he at first led them on what could be described as a "wild goose chase," purposefully misdirecting the investigation. The third mitigator the trial court found, stated fully in T.C.A. § 40-35-113(11) as that the defendant, "although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated his conduct," is not supported by the proof. The trial judge stated, when finding this mitigating factor present, that

---

[5] T.C.A. § 40-35-114(8)

[6] T.C.A. § 40-35-113(4)

[7] T.C.A. § 40-35-113(9)

[8] T.C.A. § 40-35-113(11)

[9] T.C.A. § 39-11-403

Number 11, about the unusual circumstance, it's not really unusual in that sense, but there was a mutual sharing of drugs, so maybe that was not a sustained intent to violate the law so again, I find those somewhat.

The defendant's steady use of illegal drugs over 25 years, and particularly obtaining for and shooting cocaine with this particular victim weekly for at least 9 years before her death, does not show at all that "it is unlikely that a sustained intent to violate the law motivated his conduct." The "substantial assistance" he furnished was clearly a violation of the law. Also, the defendant was well aware at the time of the offense that he or the victim could die from the "hits" they injected, and watched each other for this purpose, so that to the defendant, the victim's death was not at all under "unusual circumstances." According to the defendant's testimony, he and the victim had even made a promise to each other "over the years" that if either one of them died of an overdose, the other would dispose of the body, planning for such an event.

The record supports the application of enhancement factors (1) and (7), and although the application of enhancement factor (13) is not proper due to the defendant's being on only misdemeanor probation, enhancement factor (8) is applicable to defendant's conviction. Mitigating factor (11) is not supported by the record, and the two remaining mitigating factors, (4) and (9), are entitled to little weight. The record therefore fully supports the sentence of ten years given the defendant by the trial judge.

The defendant also contends that he should have received "split confinement" pursuant to T.C.A. § 40-35-306. We disagree. Split confinement only applies to defendants receiving probation.[10] The defendant is ineligible for probation because his

sentence is in excess of eight years.[11] Therefore the defendant is ineligible for "split confinement."

The judgment of the trial court is AFFIRMED.

---

[10] T.C.A. § 40-35-306(a)

[11] T.C.A. § 40-35-303(a)

_____

_____CHRIS CRAFT, SPECIAL JUDGE


CONCUR:


_____

JERRY L. SMITH, JUDGE


_____

JOE RILEY, JUDGE