IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 20, 2001

## STATE OF TENNESSEE v. PATRICK KOSSOW

**Appeal from the Circuit Court for Warren County**
**No. F-7839     Charles D. Haston, Judge**

--------

**No. M2000-01871-CCA-R3-CD - Filed August 23, 2001**

--------

Defendant entered pleas of guilty to the rape of a child in Counts 1, 6, and 7 of the indictment and in Count 3, a plea of guilty to aggravated sexual battery. At the conclusion of a sentencing hearing, the trial court imposed sentences of 24 years for each count of rape of a child and 12 years for the offense of aggravated sexual battery. The trial court ordered that the sentences be served consecutively, resulting in a sentence of 84 years. On direct appeal, Defendant asserts that the trial court erred in imposing an inappropriate sentence on each count and erred in imposing consecutive sentencing on all charges. After a review of the record, we affirm the trial court's judgment.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

L. TERRY LAFFERTY, SR. J., delivered the opinion of the court, in which DAVID G. HAYES, J., and THOMAS T. WOODALL, J., joined.

Dan T. Bryant, McMinnville, Tennessee, for the appellant, Patrick Kossow.

Paul G. Summers, Attorney General and Reporter; Laura McMullen Ford, Assistant Attorney General; and Dale Potter, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The March 1999 session of the Warren County Grand Jury indicted Defendant in seven counts of rape of a child and five counts of exploitation. On March 31, 2000, Defendant entered three pleas of guilty to rape of a child in Counts 1, 6, and 7, and one plea of guilty to aggravated sexual battery in Count 5. In Count 1, Defendant admitted to rape of a child, TLP, age 10, in October 1996. In Count 5, Defendant admitted he did intentionally touch the intimate parts of KT, a child, age 10, in June 1998. As to Count 6, Defendant admitted to sexual intercourse with CAT, a child, age 6, in August 1998. And in Count 7, Defendant had sexual intercourse with CAT, a child, age, 7 in January 1999. All of these offenses occurred in Defendant's residence. Defendant was a friend of the children's parents and the children had been left in his custody while they worked. In

consideration of Defendant's guilty plea in four cases, the other counts would be dismissed. Defendant requested a sentencing hearing for the trial court to determine an appropriate sentence for each offense.

SENTENCING HEARING

Derwin Adcock, an investigator for the McMinnville Police Department, testified that he talked to the children involved in these offenses and based upon what they told him, he obtained a search warrant for Defendant's residence. Officer Adcock recovered some magazines such as "*Playboy*," some pornography usually bought at adult-type bookstores, a video camera, still cameras and some plastic tubing. These items were described by the children as being used by Defendant in photographing them in the nude and tying the children up while sex acts were performed on them. Office Adcock found some photographs in a suitcase of nude young females. The nude photographs were of other unknown females. When Officer Adcock talked to Defendant, Defendant's answers to questions seemed appropriate under the circumstances. Although, the children told Officer Adcock that Defendant had taken videos of them, he did not find any such videos during his search. When Officer Adcock went to Defendant's residence, a note was taped to the front door stating, "Gone for the summer, will be back." Office Adcock put out a broadcast for Defendant who was found at a local pawn shop.

Brenda Thomas, mother of the three girls, stated that she and her husband had been married for six years. They had a six-month old child. She stated that she had a daughter, TLP, age 8 at the time of the offense, and two stepdaughters, KT, age 11, and CAT, age 8. When she and her husband were married in 1994, Defendant was an acquaintance of her husband and on occasion, Defendant lived in their home. Defendant obtained some disability benefits and did not work. While Mrs. Thomas worked, Defendant would take care of the children during the school year. Mrs. Thomas advised the children that they must obey Defendant or she would punish them for any misbehavior. Mrs. Thomas learned about the abuse of her children from her mother who had been told by TLP what Defendant had been doing to them. Mrs. Thomas called her mother-in-law who lived close by Defendant and had her pick up one of the girls from the Defendant's care. However, Defendant was not at home, but showed up later with the child. She stated that TLP was taken to the hospital and became scared that Defendant would see their car and know she had told them. The children have been in counseling for seven months to a year. According to Mrs. Thomas, Defendant could manage his money and his house and the children came to love him. She admitted that she informed Rebecca Smith, an employee of the Department of Mental Health, that she always felt comfortable with her children around Defendant. As to Defendant's psychiatric condition, Mrs. Thomas testified that Defendant had gone to a doctor trying to get out of paying child support and he told them that he was going to shoot Ronald McDonald. This occurred before the child abuse was discovered. Mrs. Thomas was vague as to Defendant's medication, but she stated, "he was playing. He told us what he was going to go do before he done it to get out of his child support." However, she admitted Defendant had gone to the Mental Tennessee Health Center.

TLP testified that she is 11 years old and has known Defendant for four years. Defendant would babysit for her and take care of her when her parents were not available. Her parents said that "if we don't mind him, we will get in trouble." Defendant started talking about sex and asked them to perform sex acts. This started with him telling us about *Playboy* magazines and "how we could become one." He showed the victim pictures of women without clothes. Also, Defendant would make her, KT, and her stepbrother, Mickey, age 9, watch movies of people having sex. Defendant told them "they needed to do what they were doing on the movies." CAT would be at their grandmother's house or with a friend. She stated Defendant made them play "strip poker." Sometime after her sister, "Tater" was born, Defendant asked her to have sex with him. This was in October 1996. Since that time, Defendant has had sex with her several times a week. She was also present when Defendant had sex with her two sisters. Defendant would perform oral sex and put his fingers in CAT's and KT's private parts. Once, Defendant had the victim smoke some marijuana. Defendant told the victims that if they told anyone he would kill all the family and kill them. Defendant also told the victims that if they did not have sex with him he would do the same to "Tater," her baby sister.

However, the victim told her cousins during a game called "deepest darkest secrets," and told them to tell her grandmother. After she told her cousins, she was taken to the hospital and became afraid Defendant would hurt her. TLP testified that she attends counseling, suffers nightmares that she will be raped by others, and was harassed at school about being raped. She stated that Defendant took some pictures of her, but they were not developed.

On his own behalf, Defendant testified that he did have sexual intercourse with KT, CAT, and TLP. These acts occurred over a two year period, beginning in 1996. Defendant stated that while in the ninth grade he met the victims' father, Stan Thomas, in school. Stan is the father of KT and CAT. It was after Stan married Brenda Thomas that these incidents occurred between him and the children. Defendant testified that he hurt his back falling off a truck while doing forestry work. Defendant stated, "Well, I had picked the children up to watch them -- to go to my house and had sex with the children." Defendant agreed with some of the testimony of Brenda Thomas and TLP, but not all of it. According to Defendant he had sex with TLP once, not numerous times as she previously stated. Defendant stated that he had sex with CAT twice, and touched KT in a sexual manner. KT did not want to have sex, so they did not. Defendant denied threatening to harm or kill the children if they told anyone, but did tell them not to tell anyone. Defendant denied that he took pictures of KT. He had taken pictures of them, but they were not naked. As to the photographs of unknown females, Defendant stated he did not take those pictures and that they belonged to a friend who had used the camera. Some of the "girly" magazines were given to Defendant by the victim's father, Stan Thomas. Defendant testified that he was sorry it happened.

During cross-examination, Defendant testified that he talked to TLP about sex and prepared her for sex. Sometimes she would have sex with Defendant and on other occasions she refused. Defendant denied that he asked her to smoke marijuana. As to the number of sexual acts with TLP, Defendant stated it was less than 10. Defendant stated he had sex with KT and CAT several times. Defendant could not state why he had sex with a 10 year old child. Defendant denied telling anyone

about buried weapons, but admitted that he plotted out a plan to blow up Center Hill Dam. He stated that it was not a serious plan. Defendant stated that he had a marijuana conviction in 1986 or 1987. Defendant heard that TLP was having sex with a cousin called "T." Defendant did advise the trial court that he had sex with one of the victims in the presence of others.

At the conclusion of the testimony, the trial court indicated it would review the record and enter a sentencing judgment. On July 17, 2000, the trial court entered such order setting forth its reasons for the sentence imposed. Defendant requested the trial court to consider two mitigating factors: (1) the Defendant's conduct neither caused nor threatened serious bodily injury; and (2) the Defendant suffered from a mental or physical condition that significantly reduced his culpability. The trial court found both factors to be without merit. Defendant's acts of penetrating a 10 year old, and two six year olds over an extended period of time, followed by threats of harm if revealed, negates factor (1). The pre-sentence report has attached psychiatric and medical reports which disprove factor (2). Furthermore, no impairment of any kind was observed by the trial court during Defendant's plea or sentencing hearing.

As to enhancement factors, the trial court found five enhancement factors applicable. Enhancement factor (1), the Defendant has a previous history of criminal behavior in addition to those necessary to establish the appropriate range. Defendant's use and partaking of marijuana during the time he raped the three children. Also, Defendant exposed the children to sexually oriented and explicit videos and magazines, and had the children engage in "strip poker." Defendant molested the three victims over a two year period. Factor (4), a victim of the offense was particularly vulnerable because of age or physical or mental disability. The trial court found this factor especially applicable to the six year old victim. Defendant's size, 5 feet 9 inches tall, 180 pounds, in performing sex acts on the child and residual effects is why this factor had merit. The child was particularly vulnerable because of the elements of fear and intimidation, his threat of physical harm for betraying their secrets made them especially susceptible because of their age. Enhancement factor (6), the personal injuries inflicted upon the victims were particularly great. The trial court found this factor applicable due to the size of Defendant, his age, and the threat of such an invasion of a tiny body by a large one represents a substantial risk of tearing, to say nothing of the possibility of a disease. The physical and emotional damage to these young girls cannot be calculated. Defendant admitted that he did not use a condom. Enhancement factor (7), the offense involved a victim and was committed to gratify Defendant's desire for pleasure or excitement. The trial court rejected Defendant's argument that this factor is an element of the offense. The trial court found that in the instant case, the acts were committed upon the bodies of children who could not defend themselves and done purely out of a perverted need to gratify and excite his own personal needs and desires. Although this factor was applicable to the three offenses of rape of a child, the factor was not applicable to the offense of aggravated sexual battery. It was part of Defendant's plan to gratify his desire for pleasure or excitement by having the children play games, pose for photographs and watch sexually explicit videos. Enhancement factor (15), the Defendant abused a position of private trust. The trial court found this factor clearly applicable, in that Defendant abused his position of babysitting and used this trust in fulfilling the offenses.

Based upon Defendant's statement in the pre-sentence report, the trial court commented that Defendant fell within the top of the range offense. The trial court found it was necessary to impose consecutive sentences due to the lurid and sickening picture as described by the victim of Defendant being a skilled and determined sexual predator involving small and defenseless children. Citing *State v. Taylor*, 739 S.W.2d 227 (Tenn. 1987).

## LEGAL ANALYSIS

Defendant asserts that the trial court erred by imposing inappropriate sentences in three counts of rape of a child and one count of aggravated sexual battery. In his assertion, Defendant contends that the trial court erred in rejecting two mitigating factors set forth in Tennessee Code Annotated § 40-35-113, and that the trial court misapplied four enhancement factors. Defendant concedes that the trial court properly considered enhancement factor (15), an abuse of private trust, Tenn. Code Ann. § 40-35-114.

## STANDARD OF REVIEW

When an accused challenges the manner of service of a sentence, this Court has a duty to conduct a *de novo* review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401 (d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a *de novo* review of the sentence, this Court must consider: (a) the evidence, if any, received at trial and sentencing hearing; (b) the pre-sentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating and enhancement factors; (f) any statement made by the Defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; *State v. Thomas,* 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after giving due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately by the record, then we may not modify the sentence even if we would have preferred a different result. *State v. Fletcher,* 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

For imposition of Class A felony sentence, the presumptive sentence shall be the midpoint of the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c). For Class B felonies, the presumptive sentence shall be the minimum sentence in the range if there are no enhancement or mitigating factors. *Id.* It is agreed in the record, that Defendant is a Range I offender for the offense of rape of a child and aggravated sexual battery. Further, Tennessee Code Annotated § 40-35-210(e) provides in pertinent part: "Should there be enhancement and mitigating

factors for a Class A felony, the court must start at the midpoint of the range, enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence within the range as appropriate for the mitigating factors." Although, Defendant contends the trial court failed to comply with the requirements of Tennessee Code Annotated § 40-35-210(e), thus, the presumption of correctness does not apply. We find that the trial court complied with the sentencing principles of the 1989 Sentencing Reform Act and conduct our review with a presumption of correctness.

## MITIGATING FACTORS

Defendant contends that the trial erred in rejecting the mitigating factor that Defendant's conduct did not cause or threaten serious bodily injury. Tenn. Code Ann. § 40-35-113(1). Defendant would assert that *State v. Carico,* 968 S.W.2d 280, 286 (Tenn. 1998) supports this mitigating factor. We agree with the State that this assertion is misplaced. The supreme court held that the acts committed did not pose a potential for bodily injury, nor were the personal injuries inflicted upon the victim particularly great . . . but the evidence did not show that the victim . . . sustained appreciable personal injuries beyond those incidental to the crime of aggravated rape. The facts in *Carico* concerned acts of fellatio with a 10 year old, rather than vaginal penetration of two six year olds and one 10 year old girl. We find the record supports denial of this mitigating factor. Although, there is no proof in the record of serious bodily injury to these three girls, there is proof of mental anguish, nightmares and harassment by schoolmates. The definition of serious bodily injury encompasses a mental element. *State v. Huddleston,* No. 02C01-9706-CC-00228, 1998 WL 67684, at *3 (Tenn. Crim. App. 1998), *perm. app. denied,* (Tenn. 1998); *State v. Suggs,* No. M1999-02136-CCA-R3-CD, 2000 WL 1521481, at *1 (Tenn. Crim. App. 2000).

Next, Defendant asserts that the trial court erred in rejecting the mitigating factor that Defendant was suffering from a mental or physical condition that significantly reduced his culpability for the offense. Tenn. Code Ann. § 40-35-113(8). Based upon mental health reports compiled at Middle Tennessee Mental Health Institute, Defendant was suffering from a mental illness that should have been considered in assessing an appropriate sentence. The report quotes: "Mr. Kossow's reasoning and judgment appeared impaired in light of his tendency to make repeated threats toward the federal government. He appeared to have little awareness of the possible consequence of making such statements . . . . Mr. Kossow's contact with reality varied." The trial court rejected this mitigating factor based on the pre-sentence report with the attached mental health reports which seem to dispute Defendant's argument. Furthermore, the trial court observed Defendant's demeanor and did not find any indication of mental or judgmental problems.

A summary of the mental health reports established that Defendant had two admissions to the Middle Tennessee Mental Health Institute ("MTMHI"). The first in November 1996, due to threats against his attending psychiatrist at Harton Hospital. Defendant became involved with the police over failure to pay child support and threatened a stand off. Defendant was diagnosed with Bipolar Affective Disorder. During 1994 to 1998, Defendant was seen at the Harton Hospital, Tullahoma, Tennessee, and the Cheer Mental Health Center, McMinnville, Tennessee. In August

-6-

1999, Defendant was sent to the forensic division of MTMHI for evaluation of competency and the possibility of an insanity defense due to the charges. Defendant suffered from alcohol abuse and the use of marijuana. In the reports, there are statements that Defendant threatened the federal government, plotted to blow up the Center Hill Dam, and being a member of the Tennessee National Guard. In reality, Defendant was a member of a volunteer group that supported the National Guard. The reports reflect that MTMHI was aware of Defendant's conversations with Brenda and Stan Thomas about evading child support payments and the suggestion that if he had mental problems he could avoid these problems. Ultimately, Defendant was found competent to stand trial, and an insanity defense was not viable. However, Defendant needed commitment due to the possibility of danger to himself and others. MTMHI's final discharge summary indicated there were anticipated post-discharge problems: noncompliance with treatment; self-destructive behavior; substance abuse; anti-social behavior; psychosis; and manipulative behavior. From our review, Defendant's mental health indicates some impairment. However, we cannot disagree with the trial court's analysis. The trial court observed Defendant during his testimony. The trial court found some of Defendant's testimony quite truthful, but suspect in other parts. The trial court determined that Defendant's demeanor was credible and found no mental difficulties. We cannot dispute the trial court's findings. There is no merit to this issue.

ENHANCEMENT FACTORS

The trial court found five applicable enhancement factors, one of which the State did not submit for consideration. Defendant asserts that the trial court erred in applying four of these enhancement factors, but Defendant concedes that enhancement factor (15), an abuse of private trust is applicable.

Defendant contends that the trial court erred in applying enhancement factor (1), the Defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. Tenn. Code Ann. § 40-35-114(1). The only evidence of other criminal behavior was not previous, but contemporaneous. This argument has been rejected by our supreme court. In *State v. Carico,* 968 S.W.2d at 288, the court held that evidence of prior sexual acts with a 10 year old child was properly considered by the trial court as to criminal behavior. *See State v. Hunter,* 926 S.W.2d 744, 748 (Tenn. Crim. App. 1995), *perm. app. denied,* (Tenn. 1996). Defendant's engagement of numerous sex acts over a two year period with three children, coupled with the use of marijuana, exploitation of the children by the use of sexually explicit videos and magazines clearly demonstrates criminal behavior. There is no merit to this issue.

Defendant contends that there is no proof in the record for the application of enhancement factor (7), the offense was committed to gratify the Defendant's pleasure or excitement, to enhance Defendant's sentence. Further, Defendant submits that this factor is part of the offense in which he pled guilty. In *State v. Arnett,* No. E1998-00051-SC-R11-DC, op. 11, (Tenn. 2001), the Supreme Court held that the application of factor (7) requires the State to provide additional objective evidence of the Defendant's motivation to seek pleasure or excitement through sexual assault . . .

factor (7) may be applied with evidence including, but not limited to, sexually explicit remarks and overt sexual displays made by Defendant, such as fondling or kissing the victim or otherwise behaving in a sexual manner, or remarks or behavior demonstrating Defendant's enjoyment of the sheer violence of rape. Citing *State v. Alvarado*, 961 S.W.2d 136, 152 (Tenn. Crim. App. 1996)(applying this factor where Defendant told a co-worker that he was going to go out and get drunk and have sex the weekend that he committed aggravated rape); *State v. Jones*, 953 S.W.2d 695, 699 (Tenn. Crim. App. 1996)(applying this factor where Defendant treated his daughter as if she were his girlfriend by wanting her to enjoy their sexual encounters and instructing her to participate by moaning and acting aroused). *State v. Adams,* 864 S.W.2d 31, 33 (Tenn. 1993); *State v. Carico,* 968 S.W.2d at 286. We agree with the trial court that Defendant furthered his desire for sexual pleasure and gratification by enticing these small girls into watching sexually explicit videos, magazines and playing "strip poker." By this maneuvering, Defendant accomplished his goal to have these children engage in sex with him. Clearly we find objective evidence supports the application of this factor (7).

Next, Defendant asserts that the trial court erred in considering enhancement factor (6), the personal injuries inflicted upon the victim was particularly great. Tenn. Code Ann. § 40-35-113. The only proof in the record to sustain this factor was the testimony of the mother and victim of nightmares. The trial court found that the Defendant's size, 5 feet 9 inches tall, 180 pounds, in repeated forced entry caused great personal injury in that this created a substantial risk of tearing, plus the physical and emotional damage cannot be calculated. The State counters that there are additional facts supporting this factor. Persistent nightmares, the girls memories of their own rapes, witnessing the rape of one another, being tied up with tubing normally used in an aquarium, and then telling TLP he would have sex with their youngest sister, a mere infant. The term "personal injury" as used in enhancement factor (6) is broad enough to embrace the emotional injuries and psychological scarring sustained by a victim of a sexual offense. *State v. Melvin,* 913 S.W.2d 195, 203 (Tenn. Crim. App. 1995); *See State v. Griffis,* 964 S.W.2d 577, 602 (Tenn. Crim. App. 1997). However, before this factor may be used to enhance a sentence within the appropriate range, the State must establish that the emotional injuries and psychological scarring are "particularly great." *Id.* Also, in *State v. Arnett, supra,* op. 9, the Supreme Court addressed the issue of the quantum of proof to determine enhancing a Defendant's sentence who has caused "particularly great" psychological injury; "although we agree that expert proof may help in the identification of "particularly great" psychological injuries, we decline to *require* (emphasis added) expert proof. Instead, we hold that application of this factor is appropriate where there is specific and objective evidence demonstrating how the victim's mental injury is more serious and more severe than that which normally results from this offense. Such proof may be presented by the victim's own testimony, as well as the testimony of witnesses acquainted with the victim."

There is no expert testimony commenting on emotional or psychological scarring, there is evidence in the record of the affect of the sexual offenses on the victims. The mother testified as to the nightmares, TLP's concern about her future, fearfulness toward Defendant, and continued counseling well over a year after disclosure of the sexual offenses. The child, herself, testified as to the affect this sexual episode has on her life, physically, mentally, and at school. The trial court

heard the testimony of the witnesses and observed the demeanor of the victim who testified. Thus, we must give great weight to the trial court's decision. We cannot disagree with the trial court's analysis. There is no merit to this issue.

Next, Defendant contends that the trial court erred in applying factor (4), in that the victim was particularly vulnerable because of age or physical or mental disability. Tenn. Code Ann. § 40-35-114 (Supp. 1995). Defendant cites *State v. Lynn Roosevelt Hunt,* 1986 Tenn. Crim. App. LEXIS 2494, Coffee County, No. 86-107-III (Tenn. Crim. App. 1986) for holding that the "age of the child was an essential element in making this case of aggravated rape and cannot be used to further enhance the punishment." The same logic should apply to the offense of rape of a child under age 13. In applying this factor, the trial court concluded the size of Defendant, the smallness of the children, their age, the elements of fear and intimidation that Defendant exercised over them as a babysitter, left them particularly vulnerable. In *State v. Adams,* 864 S.W.2d 31, 34 (Tenn. 1993), our supreme court held that the vulnerability enhancement in factor (4) relates more to the natural physical and mental limitations of the victim than merely to the victim's age. Therefore, we conclude that Tennessee Code Annotated § 40-35-113(4) can be considered as an enhancement factor in cases such as the one at bar. The supreme court set forth the standards to determine the facts in an aggravated rape case where this enhancement factor maybe applicable: "the factor can be used in an aggravated rape case if the circumstances show that the victim, because of his or her age, physical or mental condition, was in fact "particularly vulnerable," i.e., incapable of resisting, summoning help, or testifying against the perpetrator." Other factors may be considered, whether the victim's age (extremely old or extremely young) is entitled to additional weight, and whether the vulnerability of victim made more of a target of the offense, or conversely whether the offense was committed in such a manner as to render the vulnerability of the victim irrelevant. *State v. McConnell,* No. E1998-01288-CCA-CD, 2000 WL 688588 (Tenn. Crim. App. 2000), *perm. app. denied,* (Tenn. 2001). We agree with the trial court's analysis that the age of the victims and their relationship to Defendant made them especially vulnerable. The children were admonished by their parents to obey Defendant or they would be punished. Defendant exploited the children's age and position by embarking on a scheme to engage the children in sexual acts, which were apparently unknown to the children prior to their seeing the magazines and videos. We find this factor is applicable to the facts in this case. There is no merit to this issue.

## CONSECUTIVE SENTENCING

Although, Defendant concedes that some of the sentences are subject to consecutive sentencing, he argues that the trial court erred in running all sentences consecutive. More particularly, Defendant asserts that the evidence of residual emotional damage, as used by the trial court, is slight at best to support consecutive sentencing. The Court agrees with the State that Defendant complains of many of the factors used to enhance the sentences were considered to order the sentences to be served consecutively. Thus, Defendant was hit with a "double whammy."

The fact that the trial court used some of the enhancement factors to increase the length of the sentence within the appropriate range does not bar the use of these same facts in determining

whether consecutive sentencing is proper. *State v. Melvin,* 913 S.W.2d 195, 205 (Tenn. Crim. App. 1995); *State v. Hoyt,* 928 S.W.2d 935, 949 (Tenn. Crim. App. 1995); *State v. Meeks,* 867 S.W.2d 361, 377 (Tenn. Crim. App. 1993), *perm. app. denied,* (Tenn. 1993); *State v. Lane,* 3 S.W.3d 459, 460 (Tenn. 1999).

Tennessee Code Annotated § 40-35-115(b) provides: The court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:

> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims.

To support consecutive sentencing pursuant to Tennessee Code Annotated § 40-35-115(b)(5), the State must establish sufficiently the aggravating circumstances accompanying the sexual offenses. *State v. Lane*, 3 S.W.3d 456, 460 (Tenn. 1999). First, the relationship between Defendant and the multiple victims in this cause is well established. The parents of the children entrusted their welfare and care to a family friend over a period of two years. During this two-year period, Defendant engaged in a plan to sexually abuse these children by exposing them to explicit sexual material, such as videos, magazines, etc., to prepare them for sexual activity. Although there was a dispute between Defendant and the children as to how many sexual acts occurred, the trial court found Defendant's testimony less credible on this subject matter. The victim, TLP, testified as to the affect these events have had on her since Defendant's arrest. She has been in counseling for seven months to a year, which was corroborated by her mother. She suffers nightmares that she will be raped by others and she has been harassed at school about being raped.

Applying the criteria set forth in Tennessee Code Annotated § 40-35-115(b)(5) to the facts in this record, clearly the trial court was not in error for ordering all sentences to be served consecutively. The decision of whether prison terms are to be consecutive or concurrent is left to the sound discretion of the trial court. *State v. Adams,* 973 S.W.2d 224, 230-31 (Tenn. Crim. App. 1997), *perm. app. denied,* (Tenn. 1998). There is no merit to this issue.

In conclusion, however, we hold that the trial court's judgment is affirmed.

_____
L. TERRY LAFFERTY, SENIOR JUDGE