IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs March 1, 2011

## STATE OF TENNESSEE v. KENNETH HAYES

**Direct Appeal from the Criminal Court for Shelby County**
**No. 09-02707      Lee V. Coffee, Judge**

---

**No. W2010-00309-CCA-R3-CD  - Filed August 19, 2011**

---

A Shelby County jury convicted the Defendant, Kenneth Hayes, of reckless aggravated assault, two counts of aggravated assault, criminal attempt to commit the intentional killing of an animal worth over $1000, theft of property over $1000, and evading arrest.  The trial court ordered the Defendant to serve an effective sentence of forty years, eleven months, and twenty-nine days in the Tennessee Department of Correction.  On appeal, the Defendant argues that the trial court imposed an excessive sentence and that it erred when it denied him alternative sentencing.  After a thorough review of the record and the applicable law, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Juni S. Ganguli, Memphis, Tennessee, for the Appellant, Kenneth Hayes.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; William L. Gibbons, District Attorney General; Doug Carriker and Kate Edmands, Assistant District Attorneys General, for the Appellee, State of Tennessee.

### OPINION

#### I. Facts
#### A. Trial

1

A Shelby County grand jury indicted the Defendant for attempt to commit the intentional killing of an animal worth over $1000, felon in possession of a handgun, theft of property over $1000, evading arrest, and three counts of aggravated assault. A trial was held on these charges, and the following is a summary of the evidence presented.[1]

On January 21, 2009, at approximately 1:00 a.m., the owner of Broadway Pizza, Dewana Ishee, received a phone call from the security company alerting her that a break-in had occurred at her family business in Memphis, Tennessee. Mrs. Ishee and her husband, Denny Ishee, immediately drove to Broadway Pizza where they saw the Defendant's van backed up to the front door of their restaurant and two men carrying the Ishees's 62" Samsung television from the building. The Ishees exited their vehicle and confronted the men, ordering them to set the television down. The men complied, but the Defendant's co-defendant pulled out a pistol as he approached Mr. Ishee. In response, Mr. Ishee fired a gun that he was carrying with him at the time. The co-defendant fled the scene. While this was occurring, the Defendant had taken steps toward Mrs. Ishee, which she interpreted as aggressive movement. She moved forward and grabbed the Defendant around the shoulders and held on to him. During this altercation, the Defendant got into his van with Mrs. Ishee still holding on, halfway in the vehicle with her feet still touching the ground. Meanwhile, two police officers arrived on the scene and saw the van with the Defendant behind the wheel and Mrs. Ishee's legs protruding from the driver side door. The Defendant put the car in drive and accelerated forward, ramming into the police car that had just arrived. Two police officers, at the time, were trying to exit the vehicle. One of the police officers, Officer Jackson, was able to get back into the police car before impact. Officer Watson, however, was unable to get back in to the vehicle quickly enough, and, as a result of the impact, he injured his wrist and fingers. After the impact, Officer Jackson got out of the police car and approached the van with his weapon drawn. Mrs. Ishee had maintained her grasp on the Defendant but released him when Officer Jackson instructed her to do so. Upon being released, the Defendant fled the scene. Officer Jackson followed the Defendant as far as he could and notified the dispatcher of the direction in which the Defendant was fleeing.

Based on Officer Jackson's report, a helicopter and canine unit, comprised of Officer Twilley and his canine partner Gunner, were dispatched to the area of Overton Park. A helicopter unit located the Defendant crouched down in a thickly wooded area and guided Officer Twilley and Gunner to within ten feet of the Defendant's location. After notifying the Defendant, Officer Twilley released Gunner to apprehend the Defendant. Several seconds

---

[1] Because the Defendant does not challenge the sufficiency of the evidence, the factual summary is presented in the light most favorable to the State.

after Gunner's release, Officer Twilley heard Gunner make a yelping sound the officer had never before heard. Officer Twilley approached and called Gunner off of the Defendant. Officer Twilley ordered the Defendant to show his hands, but the Defendant refused to comply. Officer Twilley struck the Defendant multiple times on the shoulder and the Defendant still refused to comply so Officer Twilley engaged Gunner again and once Gunner had the Defendant on the ground, Officer Twilley could see the Defendant's hands to ensure he was unarmed. After the Defendant was taken into custody, police officers recovered from the scene a pistol and a knife covered with blood and dog hair. Officer Twilley also found that Gunner was bleeding extensively and immediately transported him to an emergency center for treatment of ten stab wounds. After several weeks of treatment and recuperation from the stab wounds, the canine officer returned to active duty.

After the Defendant was apprehended, police officers transported him back to Broadway Pizza, and the Ishees positively identified the Defendant as one of the two men who had been in possession of their television. A search of the Defendant's vehicle, which the Defendant had abandoned at the Broadway Pizza, revealed a loaded handgun located on the floorboard of the passenger side of the vehicle.

Based upon this evidence, a jury convicted the Defendant of reckless aggravated assault, two counts of aggravated assault, criminal attempt to commit the intentional killing of an animal worth over $1000, theft of property over $1000, and evading arrest.

### B. Sentencing Hearing

At the Defendant's sentencing hearing, the State entered into evidence the Presentence Investigative Report and a victim impact letter from Officer Watson, the officer who was injured when the Defendant rammed his van into the officer's police cruiser. In the letter, Officer Watson noted that the Defendant was "reckless without regard to the lives of several police officers whose lives were in jeopardy," that he "caused several thousands of dollars worth of damage to government and private property," and that the injuries Officer Watson sustained from this incident caused him "to be off work for several days and on partial duty for over a month." Officer Watson requested that the Defendant be sentenced to the maximum punishment for his crimes and that consecutive sentencing be imposed.

Mrs. Dewana Ishee testified that, as a result of this incident, she had changed the way her business operates, closing hours, and employee schedules and that she was considering moving her business to a safer area. Mrs. Ishee said that she personally worked at the restaurant every night until closing to ensure her employees are safe and that she carried her gun. She requested that the Defendant receive the maximum sentence in order to convey to business owners in the community that they will be protected. Mrs. Ishee also stated that a

3

maximum sentence would show that all the effort and time put forth by the police in apprehending the Defendant was not wasted.

Mr. Ishee testified that he felt "terrified" and "helpless" as he witnessed his wife being "dragged on the asphalt with her legs hanging out of the van" while the Defendant accelerated his van forward. He reflected that, "[O]ur whole family could have just ended that day and it's just a terrible experience and I hope nobody has to go through that." Mr. Ishee described the atmosphere at work now as filled with "apprehension" and work is no longer "fun." He requested the trial court order the Defendant to serve the maximum sentence.

The Defendant acknowledged that he has had "problems" in Louisiana prior to these incidents. As to his conduct in this case, he said, "I apologize for everything that happened that night even if I did or didn't have nothing to do with it. I apologize." The Defendant maintained that he never intended to hurt anyone and never intended to run into the police car. The Defendant further stated that he never intended to injure the police dog. The Defendant said that he learned a lot during this incarceration and that, given the chance, he would never put himself in a position that would return him to court.

On cross-examination, the Defendant denied that police ever spoke to him or warned him that a police dog was to be released. The Defendant said that he did not know that the animal attacking him was a police dog. He said that, if police had told him they were going to release a dog, he would have surrendered himself. He said he only stabbed the police dog in an attempt to protect himself.

The Defendant acknowledged that he had previously pled guilty to burglary, possession of cocaine, and battery of a police officer and was sentenced to three years probation. He also acknowledged that this probation sentence was revoked at some point, and that he was required to serve the remainder of his sentence.

At the conclusion of the hearing, the trial court sentenced the Defendant to eight years confinement for the reckless aggravated assault conviction, to ten years each for his two aggravated assault convictions, to four years for the criminal attempt to commit the intentional killing of an animal worth over $1000, to eight years for the theft of property over $1000 conviction, and to eleven months and twenty-nine days for the evading arrest conviction. The trial court then ordered that all of the sentences run consecutively to one another for an effective sentence of forty years, eleven months and twenty-nine days confinement in the Tennessee Department of Correction. It is from these judgments that the Defendant now appeals.

## II. Analysis

4

On appeal, the Defendant claims that the trial court's sentence is excessive. Specifically, he contests the application of certain enhancement factors, the manner in which he was ordered to serve his sentence, and the alignment of the sentences. Further, the Defendant contends that a forty-year sentence in this case is so extreme as to constitute "cruel and unusual punishment" in violation of the United States and Tennessee Constitutions. The State responds that the trial court acted within its discretion and that the Defendant has failed to show an improper sentence.

When a defendant challenges the length, range or manner of service of a sentence, this Court must conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d) (2009). As the Sentencing Commission Comments to this section note, the burden is now on the appealing party to show that the sentencing is improper. T.C.A. § 40-35-401, Sentencing Comm'n Cmts (2009). This means that if the trial court followed the statutory sentencing procedure, made findings of facts which are adequately supported in the record, and gave due consideration to the factors and principles relevant to sentencing under the Sentencing Act, the appellate court may not disturb the sentence even if a different result was preferred. T. C A. § 40-35-103 (2009); *State v. Ross*, 49 S.W.3d 833, 847 (Tenn. 2001). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. *State v. Dean*, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); *State v. Butler*, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); *State v. Smith*, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994).

As we will explain in detail below, we conclude that the trial court improperly applied certain enhancement factors to some of the Defendant's sentences. As such, we review the Defendant's sentence de novo with no presumption of correctness. *See Ashby*, 823 S.W.2d at 169.

## A. Enhancement and Mitigating Factors

The Defendant claims that the trial court failed "to properly identify and weigh enhancement and mitigating factors."

## 1. Enhancement Factors

The Tennessee Criminal Sentencing Reform Act of 1989 and its amendments describe the process for determining the appropriate length of a defendant's sentence. Under the Act, a trial court may impose a sentence within the applicable range as long as the imposed

sentence is consistent with the Act's purposes and principles. T.C.A. § 40-35-210(c)(2), (d) (2009); *see State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008). The Tennessee Code allows a sentencing court to consider the following enhancement factors, as relevant to this case, when determining whether to enhance a defendant's sentence:

(1) The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range;

(2) The defendant was a leader in the commission of an offense involving two . . . or more criminal actors; . . .

(5) The Defendant treated, or allowed a victim to be treated, with exceptional cruelty during the commission of the offense;

(6) The personal injuries inflicted upon, or the amount of damage to property sustained by or taken from, the victim was particularly great; . . .

(8) The defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community;

(9) The defendant possessed or employed a firearm, explosive device, or other deadly weapon during the commission of the offense; . . .

(10) The defendant had no hesitation about committing a crime when the risk to human life was high;

(19) If a defendant is convicted of the offense of aggravated assault pursuant to § 39-13-102, the victim of the aggravated assault was a law enforcement officer, . . . provided, that the victim was performing an official duty and the defendant knew or should have known that the victim was such an officer or employee;

T.C.A. § 40-35-114(1), (2), (5), (6), (8), (9), (10) and (19) (2006). If an enhancement factor is not already an essential element of the offense and is appropriate for the offense, then a court may consider the enhancement factor in its length of sentence determination. T.C.A. § 40-35-114 (2009). In order to ensure "fair and consistent sentencing," the trial court must "place on the record" what, if any, enhancement and mitigating factors it considered as well as its "reasons for the sentence." T.C.A. § 40-35-210(e). Before the 2005 amendments to the Sentencing Act, both the State and a defendant could appeal the manner in which a trial court weighed enhancement and mitigating factors it found to apply to the defendant. T.C.A. §

40-35-401(b)(2) (2003).  The 2005 amendments deleted as grounds for appeal, however, a claim that the trial court did not properly weigh the enhancement and mitigating factors.  See 2005 Tenn. Pub. Acts ch. 353, §§ 8-9.  In summary, although this Court cannot review a trial court's weighing of enhancement factors, we can review the trial court's application of those enhancement factors.  T.C.A. § 40-35-401(d) (2009); *Carter*, 254 S.W.3d at 343.

The trial court stated that it considered the pre-sentence report, notices filed by the State, testimony at trial and the sentencing hearing, stipulations made by the parties as to the Defendant's criminal history, the facts and circumstances of the offenses, and all other factors listed in Tennessee Code Annotated section 40-35-210 in determining the Defendant's sentence in this case.  The trial court then considered the Defendant's honesty as it related to whether the Defendant was capable of rehabilitation and found that the Defendant's denial and insistence that he was an innocent "bystander" "in the wrong place at the wrong time" indicated a poor potential for rehabilitation.  The trial court found no mitigating factors applicable.  Based upon these findings, the trial court enhanced the Defendant's sentence for each of the convictions to the maximum within the range.

The following chart depicts the Defendant's convictions, potential sentence for him as a Range II offender, the enhancement factors the trial court applied to each conviction, and the sentence he received.

| Conviction | Sentence Range for Range II offender | Enhancement Factors Applied | Sentence Imposed |
|---|---|---|---|
| Reckless Aggravated Assault Officer Watson (Class D Felony) | 4-8 years | (1), (2), (8), (9), (19) | 8 years |
| Aggravated Assault of Officer Jackson (Class C Felony) | 6-10 years | (1), (2), (8), (9), (19) | 10 years |
| Aggravated Assault of Mrs. Ishee (Class C Felony) | 6-10 years | (1), (2), (5), (8), (9), (10) | 10 years |
| Attempt to commit the Intentional Killing of an animal worth over $1000 (Class E Felony) | 2-4 years | (1), (2), (5), (6), (8), (9) | 4 years |
| Theft of Property Valued over $1000 (Class D Felony) | 4-8 years | (1), (2), (5), (6), (8), (9), (10) | 8 years |
| Evading Arrest (Class A Misdemeanor) | maximum of 11 months 29 days | (1), (2), (8), (9) | 11 months 29 days |

*See* T.C.A. § 40-35-112(b)(3), (4), and (5) (2006); T.C.A. § 40-35-111(e) (1) (2006).

The Defendant generally disputes the trial court's application and weighing of enhancement factors although he specifically addresses only enhancement factor (1) in his appellate brief. As we have already stated, we cannot review a trial court's weighing of enhancement factors. We may, however, review the trial court's application of enhancement factors. Because the Defendant challenges the length of his sentence, we will review the trial court's application of enhancement factors. *See* T.C.A. § 40-35-401(d) (2009); *Carter*, 254 S.W.3d at 343.

### a. Enhancement Factor (1)

The Defendant states in his brief that "while [his] prior convictions may provide enhancement factors in determining the appropriate sentences, the trial court erred in giving them great weight." As previously stated, we cannot review the trial court's weighing of enhancement factor (1), but we will consider whether it was correctly applied.

Our review of the record reveals that the trial court correctly applied enhancement factor (1), that the Defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range. The Defendant, who was sentenced as a Range II offender, had five prior felony convictions. Only two of those felony convictions were necessary to establish him as a Range II offender.[2] The additional three convictions were, therefore, properly considered as previous criminal convictions in addition to those necessary to establish his range. Additionally, the Defendant had one misdemeanor conviction, and he admitted during his interview for the presentence report that he had used illegal drugs. This criminal conduct demonstrates that the Defendant had a "previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range." *See* T.C.A. § 40-35-114(1). As such, the trial court properly applied enhancement factor (1) to all the Defendant's sentences.

### b. Enhancement Factor (2)

Enhancement factor (2), which the trial court applied to all the Defendant's sentences, applies where the defendant is a leader in the commission of an offense that involves two or more criminal actors. T.C.A. § 40-35-114(2). As to this factor, the trial court made the following findings:

---

[2] At least two of the five prior felonies were sufficient to qualify the Defendant, pursuant to Tenn. Code Ann. § 40-35-106, as a Range II offender for each of his convictions in this case.

This Court also finds specifically that [the Defendant] was a leader in the commission of an offense involving two or more criminal actors. That finding does not mean that [the Defendant] was the leader or that he was more responsible th[a]n anyone else. If you believe Mr. Bush, he was. If you believe [the Defendant], he wasn't. Tennessee law indicates you can have more than one leader in the commission of a criminal offense and this Court does find that [the Defendant] was a leader in the commission of these offenses involving two or more criminal actors and the Court gives significant weight to that finding.

Our review of the record reveals that the Defendant and his co-defendant were unlawfully taking a large screen television from Broadway Pizza when the Ishees arrived and told the men to put down the television. The men complied, but the Defendant approached Mrs. Ishee while his co-defendant approached Mr. Ishee, each doing so in a threatening manner. In response, Mr. Ishee fired his weapon, and the co-defendant fled the scene. Meanwhile, Mrs. Ishee grabbed the Defendant around the shoulders, and the two ended up in the Defendant's van. The Defendant accelerated the vehicle and rammed it into a police car that had arrived on the scene. The Defendant then fled on foot and hid in Overton Park where a police helicopter tracked him down and instructed him to surrender. The Defendant refused, and an officer, accompanied by a canine officer, ordered the Defendant to come out of the wooded area or the officer would release the canine officer. Again, the Defendant refused. When the canine officer attempted to apprehend the Defendant, he stabbed the canine officer ten times in the mouth, chest, and face.

Nothing in the record in this case suggests that the Defendant directed the co-defendant to enter the Broadway Pizza or take the television set. *See State v. Freeman*, 943 S.W.2d 25, (Tenn. Crim. App. 1996) (Defendant who had been arguing with occupants of automobile when his uncle called out to him, and who then was handed rifle by uncle and began shooting at automobile, was not "leader" in commission of offenses, for purposes of statutory enhancement fact; *State v. Eddrick Devon Pewitte*, W2008-00747-CCA-R3-CD, 2009 WL 29891, at *10 (Tenn. Crim. App., at Jackson, Jan. 5, 2009), *no Tenn. R. App. P. 11 application filed* (Defendant's role in holding the gun, standing at door as lookout, and making threatening statements to victim sufficient evidence defendant is leader of the offense); . Moreover, nothing in the record suggests that, after his co-defendant's departure, the Defendant acted in any way to instruct or lead his co-defendant. While there was proof that more than one person was involved in the theft, there was no proof that anyone else was involved in the additional crimes the Defendant committed that night. Thus, there were no others involved for the Defendant to "lead." *See State v. Alexander*, 957 S.W.2d 1, 6 (Tenn. Crim. App. 1997). We recognize that enhancement factor (2) does not require the Defendant be the sole leader but rather that he be a "leader," and that, as a result, two criminal actors may qualify for enhancement under this factor. *See State v. Hicks*, 868 S.W.2d 729, 731 (Tenn.

9

Crim. App. 1993). Under the facts of the present case, however, the evidence does not suggest that the Defendant was a leader in the commission of the offenses according to Tennessee Code Annotated section 40-35-114(2). As such, the trial court improperly applied enhancement factor (2) to all of the Defendant's convictions.

### c. Enhancement Factor (5)

The trial court applied enhancement factor (5), that the Defendant treated, or allowed a victim to be treated, with exceptional cruelty during the commission of the offense to the following three of the Defendant's convictions: criminal attempt to commit the intentional killing of an animal; the aggravated assault of Mrs. Ishee; and theft of property over $1000.

At the sentencing hearing, the trial court addressed enhancement factor (5) as it applied to the Defendant's criminal attempt to commit the intentional killing of an animal conviction:

> [The Defendant] did treat Gunner with exceptional cruelty at the time that he attempted to kill that dog. He stabbed that dog many, many times. Stabbed the dog in his mouth. Stabbed him in his face. Stabbed the dog in his neck. This dog almost bled to death. Even after this dog had been stabbed and almost died, this dog continued to do his job and [the Defendant] continued to attack this dog. This dog, but for great, great work that was done by veterinarians, there's no reason that Gunner should in fact be alive. They had to do a blood transfusion, a total blood transfusion in order to save that dog and the dog was off work for a number of weeks before he was able to go back to work.

In *State v. Arnett*, the Tennessee Supreme Court discussed the circumstances under which enhancement factor (5) applies:

> [P]roper application of enhancement factor (5) requires a finding of cruelty under the statute "over and above" what is required to sustain a conviction for an offense. *See State v. Embry*, 915 S.W.2d 451, 456 (Tenn. Crim. App. 1995); *see also Poole*, 945 S.W.2d at 98 (requiring the facts in a case to "support a finding of 'exceptional cruelty' that demonstrates a culpability distinct from and appreciably greater than that incident to" the crime). In other words, such evidence must "denote[] the infliction of pain or suffering for its own sake or from the gratification derived therefrom, and not merely pain or suffering inflicted as the means of accomplishing the crime charged." *State v. Haynes*, No. W1999-01485-CCA-R3-CD, 2000 WL 298744, at *3 (Tenn. Crim. App. filed at Jackson, Mar. 14, 2000).

49 S.W.3d 250, 258-59 (Tenn. 2001). This Court has held that the infliction of multiple wounds is, in some instances, sufficient to support the application of enhancement factor (5)[3]. *See, e.g., State v. Darrin Bryant*, No. W2000-01136-CCA-R3-CD, 2001 WL 792616, at *7 (Tenn. Crim. App., at Jackson, July 11, 2001) (finding that the defendant's infliction of "up to" eight stab wounds on the victim, who was asleep at the time of the attack, was sufficient to warrant the application of enhancement factor (5) to the defendant's conviction for attempted first degree murder), *perm. app. denied* (Tenn. Dec. 10, 2001). *Cf. State v. Leslie Bryan Willis*, No. M2001-00634-CCA-R3-CD, 2003 WL 21523250, at *30 (Tenn. Crim. App., at Nashville, June 30, 2003) (concluding that the trial court erred when it applied enhancement factor (5) on the basis of "multiple stab wounds" because this evidence standing alone was not adequate to satisfy this factor), *perm. app. denied* (Tenn. Jan. 26, 2004).

In the case under submission, we conclude that the evidence supports the application of enhancement factor (5) to the Defendant's sentence for his criminal attempt to intentionally kill an animal valued at more than $1000. The evidence shows that Officer Twilley warned the Defendant that a canine officer would be released to apprehend the Defendant. After the opportunity to peaceably turn himself over to the police officers, the Defendant refused, and Officer Twilley released the canine officer. The dog immediately yelped, but continued his work and detained the Defendant. Officer Twilley arrived, forcibly restrained the Defendant, and, thereafter, discovered the dog was bleeding excessively. The Defendant had stabbed the canine officer ten times in the face, mouth, and chest. The Defendant repeatedly stabbed the canine officer for the sole purpose of escaping apprehension by law enforcement officers and with the knowledge that he could simply surrender and the dog would be removed. This conduct indicates the infliction of pain and suffering for its own sake. Thus, the trial court properly applied enhancement factor (5) to his conviction for criminal attempt to commit the intentional killing of an animal.

At the sentencing hearing, the trial court did not orally address the application of enhancement factor (5) to the Defendant's convictions for the aggravated assault of Mrs. Ishee and theft of property worth over $1000. Although the trial court did indicate the application of this factor to these offenses in its written order, it did not state its reasoning for the application as required by Tennessee Code Annotated section 40-35-210(e).

---

[3] We note that the cases cited involve human victims as opposed to animal victims, however, the legal analysis is relevant as to both human and animal victims. The canine officer who sustained ten stab wounds is a victim of the Defendant's crime of the criminal intent to commit the intentional killing of an animal. *See* T.C.A. § 39-14-210; *see also*, *State v. William T. Davis*, M2004-03060-CCA-R3-CD, 2005 WL 2255968, at *9 (Tenn. Crim. App., at Nashville, Sept. 15, 2005), *no Tenn. R. App. P. 11 application filed*.

Our review of the record reveals no facts that would support application of enhancement factor (5) to the Defendant's convictions for the aggravated assault of Mrs. Ishee and theft of property worth over $1000. In order for this enhancement factor to apply, the facts must be "over and above" what is required for the offense of aggravated assault for which the Defendant is convicted. *See Embry*, 915 S.W.2d at 456. The Defendant's act of accelerating the van forward while Mrs. Ishee was still holding on to the Defendant and half outside of the vehicle does not demonstrate "a culpability distinct from and appreciably greater than that incident to" the crime. *State v. Poole*, 945 S.W.2d 93, 98 (Tenn. 1997).

Further, enhancement factor (5) was not properly applied to the Defendant's theft conviction. Since the fact that the Defendant had taken the property of the victims was utilized to establish an element of the offense of theft, it should not have also been relied upon to establish the enhancement factor. *State v. Lavender*, 967 S.W.2d 803, 808 (Tenn. 1998). Moreover, there is no other evidence in the record to support application of the exceptional cruelty enhancement factor in this case. Thus, we conclude that, whereas the trial court properly applied enhancement factor (5) to the Defendant's conviction for criminal attempt to commit the intentional killing of an animal, it improperly applied this enhancement factor to the Defendant's convictions for the aggravated assault of Mrs. Ishee and theft of property worth over $1000.

### d. Enhancement Factor (6)

The trial court applied enhancement factor (6), that the personal injury inflicted upon, or the amount of damage to property sustained by or taken from, the victim was particularly great, to the Defendant's conviction for theft of property worth over $1000 and to his conviction for criminal attempt to commit the intentional killing of an animal valued at more than $1000.

As to its application of this factor to the theft of property conviction, the trial court stated the following:

> The Court also finds that the personal injuries inflicted upon and the manner or damage sustained to the Ishee's in this case, during the theft of this property, was in fact particularly great. Particularly great does not necessarily mean just monetary damage. It also includes psychological and also emotional damage. You have a woman who's owned a business for thirty-two years. Family has owned this business for a long time. Has been in an area of the city that some people say is declining. An area that some people say, "you must be crazy, Denny and Dewana Ishee, as to have a business there. Why don't you take it out to East Memphis? Why don't you take it out to Germantown? Take it out

12

to Collierville. Take this business out to some other location that may be safer," and these folks, the Ishee[ ]s have kept a business in that community for a long period of time. One of the oldest established business, not only in that community, but in the city, in the County of Shelby and they have kept the business there and they have told this Court that they have been terrorized by what [the Defendant] and by what [co-defendant] Bush did to them to the extent that they do not feel comfortable going to work. Work is not fun. They have to arm themselves with guns to make sure that they and their employees get to work and leave work in a safe condition. They have told the Court, Ms. Ishee said that she is not [sic] considering whether or not it is an advisable thing to keep that business there in Binghampton area, that she's thinking about relocating, that she's thinking that maybe she ought to take the advice of friends and family members and other business owners that are probably telling them, "You got to be crazy. You got to be absolutely crazy to keep that business here. Get the business out of here. Take it somewhere else. . .," and this Court finds that that psychological, that emotional damage, is particularly great and this Court gives that factor great weight when the Court considers those enhancement factors that apply to the theft of property.

Initially, with regard to the trial court's application of this factor to the theft conviction, we note that factor (6) may apply to psychological injuries as a result of the incident. *See State v. Hunter*, 926 S.W.2d 744 (Tenn. Crim. App. 1995); *State v. Smith*, 891 S.W.2d 922 (Tenn. Crim. App.1994). In this case, Mrs. Ishee testified that as a result of this criminal incident she has changed the way she runs her business, the hours of operation, employee schedules, and is considering moving her family business that has been in this location for thirty-two years. Mr. Ishee testified that work is no longer enjoyable and that the atmosphere is filled with "apprehension." The record in this case supports the trial court's finding that the injuries to Mr. and Mrs. Ishee were particularly great. Thus, the record supports the trial court's application of enhancement factor (6) to the Defendant's conviction for theft of property worth over $1000.

The trial court did not discuss its application of enhancement factor (6) to the Defendant's conviction for criminal intent to commit the intentional killing of an animal during sentencing. Instead, it noted in its sentencing order that enhancement factor (6) applied to the Defendant's conviction for the criminal intent to commit the intentional killing of an animal. The canine officer was stabbed ten times in his face, mouth, and chest, requiring emergency and ongoing medical treatment and only returned to active duty weeks after treatment and rehabilitation from the stabbing. The record supports the trial court's finding that the canine officer suffered particularly great injury. *See State v. Gary Edward Dougherty*, No. E2009-01782-CCA-RM-CD, 2010 WL 2134153, at *9 (Tenn. Crim. App., at Knoxville, May 27,

13

2010) (multiple stab wounds to the chest supported finding of particularly great injury), *perm. app. denied* (Tenn. Nov. 10, 2010).  Therefore, the trial court properly applied enhancement factor (6) to the Defendant's conviction for criminal attempt to commit the intentional killing of an animal.

### e. Enhancement Factor (8)

The trial court found that the Defendant, before trial or sentencing, had failed to comply with the conditions of release into the community, and applied this enhancement factor (8) to all of the Defendant's convictions:

> [The Defendant] was placed on probation at least twice in Louisiana.  Told the Court that he violated his probation on the three year probation and was sent to prison as a result of that violation and the Court does find that he did fail to comply with the sentence involving release into the community on that probation out of Louisiana.

The Defendant's own testimony is that his previously probated sentence had been revoked and that he had served the remainder of his three-year sentence.  As such, the trial court properly applied enhancement factor (8) to each of the Defendant's convictions.

### f. Enhancement Factor (9)

The trial court applied enhancement factor (9), that the Defendant possessed or employed a firearm, explosive device, or other deadly weapon during the commission of the offense, to all of the Defendant's convictions.  In so doing, the trial court stated:

> [O]n all of these counts, this Court finds that the [D]efendant possessed or employed a firearm, explosive device, or other deadly weapon during the commission of this offense.  The jury did not find [the Defendant] was a convicted felon in possession of a handgun, but this Court has to consider all the facts and circumstances of this case, not withstanding what a jury's verdict may have been and . . . this Court specifically finds that [the Defendant] did possess two firearms when he committed these offenses.

Although the Defendant does not make a formal argument as to this issue, throughout his brief the Defendant appears to infer that the trial court should not have made a finding that the Defendant possessed a firearm, when the jury had acquitted the Defendant of felon in possession of a weapon, which requires proof of a deadly weapon.  A trial court applying pre-2005 sentencing law cannot enhance a defendant's sentence above the presumptive minimum

14

unless the facts relied upon to support the enhancement were found beyond a reasonable doubt by a jury or trial court, if the defendant waived his right to jury determination. *See State v. Gomez*, 239 S.W.3d 733 (Tenn. 2007). The sentencing laws used in this case, however, are the 2005 amended sentencing laws that removed the requirement that trial courts make factual findings before enhancing a sentence from the presumptive minimum sentence. T.C.A. § 40-35-210 (2006). Under the new act, the trial court shall set a sentence within the range, and the length should be adjusted for appropriate enhancement or mitigating factors. *Id*. In doing so, the court "shall consider" advisory sentencing guidelines, such as adjustment for appropriate mitigating and enhancement factors, but is "not bound by" them. *Id*. Thus, the fact that the jury did not find beyond a reasonable doubt that the Defendant possessed a firearm does not preclude the trial court from finding by a preponderance of the evidence that the Defendant possessed a firearm during the commission of these offenses. Further, police testimony at trial was that both the knife used to stab Gunner and a gun were found in the immediate area of the Defendant's apprehension. This evidence supports the application of this enhancement factor; therefore, the Defendant is not entitled to relief.

### g. Enhancement Factor (10)

The trial court applied enhancement factor (10), that the Defendant had no hesitation about committing a crime when the risk to human life was high, to the Defendant's convictions for the aggravated assault of Mrs. Ishee and theft of property over $1000. As to the theft of property over $1000 conviction, the trial court stated at the sentencing hearing:

> [T]he Court finds that [the Defendant] had no hesitation committing a crime in which the risk [to] human life was high when he committed this theft offense. That [he] did employ or possess a firearm during the commission of this theft offense. No hesitation of committing a crime in which the risk [to] human life is high would be a necessary element of aggravated assault in attempt to kill a police dog. It is not a necessary element of theft of property and the Court does find that [the Defendant] had no hesitation in committing a crime in which the risk [to] human life is high.

Enhancement factor (10) applies where the defendant "had no hesitation about committing a crime when the risk to human life was high." T.C.A. § 40-35-114(10). In general, factor (10) applies only where the facts that establish that the defendant created a high risk to human life also demonstrate a greater culpability than that incident to the offense underlying the enhancement. *State v. Jones*, 883 S.W.2d 597, 601 (Tenn. 1994). As a result, where a high risk to human life is inherent in the underlying conviction, enhancement factor (10) applies only if the defendant disregarded a high risk to the life of a person other than the victim. *State v. Zonge*, 973 S.W.2d 250, 259 (Tenn. Crim. App. 1997).

15

We conclude that the facts of this case do not support the application of enhancement factor (10), that the Defendant had no hesitation about committing a crime when the risk to human life was high, to the Defendant's sentence for theft. The Defendant entered the Broadway Pizza early in the morning under the cover of dark when the business was closed and presumable no one would be there. *See State v. Shannon Blaylock*, No. 03C01-9412-CR-00435, 1995 WL 739844, at *7 (Tenn. Crim. App., Dec. 13, 1995), *no Tenn. R. App. P. 11 application filed* (enhancement factor (10) inapplicable where Defendant planned burglary at time when no one would be home); *State v. David Keith Daugherty*, No. 03C01-9203-CR-00082, 1993 WL 330454, at *4 (Tenn. Crim. App., August 27, 1993), *no Tenn. R. App. P. 11 application filed* (enhancement factor (10) inapplicable to theft conviction where there was no proof that customers or employees were expected or even likely to appear). He was exiting the building with a television set when confronted by the Ishees who instructed the Defendant and his co-defendant to set down the television, and they complied. The trial court is correct that the risk to human life is not a necessary element of theft, however, we do not find the facts, as they pertain to the Defendant's theft conviction to support the application of enhancement factor (10).

As to the conviction for the aggravated assault of Mrs. Ishee, enhancement factor (10) is inherent in the offense of aggravated assault. *State v. Tony Von Carruthers*, No. 02-C-01-9102-CR-00019, 1991 WL 147946 (Tenn. Crim. App., Jackson, August 7, 1991), *no Tenn. R. App. P. 11 application filed*. As this Court said in *State v. Kevin L. Gaskell*, No. 285, 1991 WL 112275 (Tenn. Crim. App., Knoxville, June 26, 1991), *no Tenn. R. App. P. 11 filed*: "It is difficult to discern a situation in which an offense committed with a deadly weapon would not necessarily entail a risk to human life." *Id.* at *6. In this case, the evidence supporting the Defendant's conviction for the aggravated assault of Mrs. Ishee proved the Defendant accelerated his van while Mrs. Ishee was still partially outside the vehicle and rammed the van into a police car. The Defendant was convicted of the aggravated assault of Mrs. Ishee for this conduct.

Even though it is an element of the crime for the Defendant's conviction for the aggravated assault of Mrs. Ishee, enhancement factor (10) may be applied in situations where persons other than the victim are in the area and subject to injury. *See Zonge*, 973 S.W.2d at 259; *see also State v. Sims*, 909 S.W.2d 46, 50 (Tenn. Crim. App. 1995). Other persons in the area at the time the Defendant rammed his vehicle in to the police car were Officer Watson, Officer Jackson, and Mr. Ishee. The Defendant was convicted of the reckless assault of Officer Watson and the aggravated assault of Officer Jackson for this conduct as it related to the officers attempting to exit their vehicle at the time the van impacted the police car. The record is void of any evidence that Mr. Ishee was in such close proximity that he was in danger of being injured. Thus, the trial court should not have applied factor (10) to the Defendant's aggravated assault conviction.

16

### h. Enhancement Factor (19)

The trial court applied enhancement factor (19), that the victims of the aggravated assaults were law enforcement officers performing in their official duty, to the Defendant's convictions for the reckless aggravated assault against Officer Watson and the aggravated assault against Officer Jackson.

The Defendant's convictions for reckless aggravated assault and aggravated assault were based upon his conduct toward Officer Watson and Officer Jackson who responded to the report of a burglary at Broadway Pizza. Both officers were performing in their official duty as law enforcement officers at the time of these crimes, and the Defendant knew or should have known the two men were police officers. Thus, the record supports the trial court's application of enhancement factor (19) to these convictions.

### 2. Mitigating Factors

The Defendant generally asserts that the trial court failed to "properly identify and weigh enhancement and mitigating factors," but does not specifically identify which mitigating factors he believes should have been applied to his sentences or make an argument as to mitigating factors. Tennessee Court of Criminal Appeals Rule 10(b) states that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." *See also* Tenn. R. App. P. 27(a)(7). Thus, issues that are not adequately briefed are deemed waived. Based upon our de novo review of these sentences, however, we will consider mitigating factors.

The Defendant did not submit any mitigating factors for consideration during sentencing, and the trial court stated that it did not find any mitigating factors applicable to the Defendant's sentences. Our review of the record does not reveal that any of the mitigating factors listed in Tennessee Code Annotated section 40-35-133 are applicable.

### 3. De Novo Review

In conducting our de novo review of the Defendant's sentence, we consider the Defendant's presentence report, the victim impact letters, and statements introduced during his sentencing hearing, the nature and circumstances of his crime, and the applicable enhancement and mitigating enhancement factors. *See* T.C.A. § 40-35-210. The following chart indicates the Defendant's convictions with the applicable enhancement factors based upon our review:

| Conviction | Sentence Range for Range II | Enhancement Factors Applied | Sentence Imposed by Trial |
|---|---|---|---|

17

|  | offender |  | Court |
| --- | --- | --- | --- |
| Reckless Aggravated Assault Officer Watson (Class D Felony) | 4-8 years | (1), (8), (9), (19) | 8 years |
| Aggravated Assault of Officer Jackson (Class C Felony) | 6-10 years | (1), (8), (9), (19) | 10 years |
| Aggravated Assault of Mrs. Ishee (Class C Felony) | 6-10 years | (1), (8), (9) | 10 years |
| Attempt to commit the Intentional Killing of an animal worth over $1000 (Class E Felony) | 2-4 years | (1), (5), (6), (8), (9) | 4 years |
| Theft of Property Valued over $1000 (Class D Felony) | 4-8 years | (1), (6), (8), (9) | 8 years |
| Evading Arrest (Class A Misdemeanor) | maximum of 11 months 29 days | (1), (8), (9) | 11 months 29 days |

The trial court sentenced the Defendant as a Range II offender to forty years, eleven months and twenty-nine days, for his convictions. *See* T.C.A. § 40-35-112(a)(1). The trial court meticulously considered the appropriate sentencing considerations and the circumstances of these offense. Although the trial court incorrectly applied certain enhancement factors when it sentenced the Defendant, the enhancement factors that were correctly applied by the trial court, together with the absence of mitigating factors and the nature and circumstances of the Defendant's crimes, resulted in sentences that are appropriate for these offenses. Accordingly, we affirm the Defendant's effective sentence of forty years, eleven months and twenty-nine days for his convictions.

### 4. Alignment of Sentences

The Defendant contends the trial court erred in finding that he was a "dangerous offender" and imposing consecutive sentencing on that basis. *See* T.C.A. § 40-35-115(4) (2006). The State responds that trial court found the requisite factors under *Wilkerson* as to each of the Defendant's sentences. *State v. Wilkerson*, 905 S.W.2d 933, 938 (Tenn. 1995).

If an offender meets one or more statutory criteria in Tennessee Code Annotated section 40-35-115, whether or not he should be sentenced consecutively or concurrently is within the sound discretion of the trial court. *State v. James*, 688 S.W.2d 463, 465 (Tenn. Crim. App.1984). A court may order multiple sentences to run consecutively if it finds, by a preponderance of the evidence, that at least one of the following seven factors exists:

(1) The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of the defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

T.C.A. § 40-35-115(b)(1)-(7). These criteria are stated in the alternative; therefore, only one need exist in order to impose consecutive sentencing.

In addition to these criteria, consecutive sentencing is subject to the general sentencing principle that the length of a sentence should be "justly deserved in relation to the seriousness of the offense" and "no greater than that deserved for the offense committed." T.C.A. § 40-35-102(1), 103(2); *see also State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002)

Our Supreme Court has noted that the "dangerous offender" category is the hardest and most subjective to apply. *State v. Lane*, 3 S.W.3d 456, 460 (Tenn. 1999). Consequently, our Supreme Court in *State v. Wilkerson* held that "particular facts" must show the following in order to base consecutive sentencing on subsection 115(b)(4): (1) that an extended sentence is necessary to protect the public against further criminal conduct by the defendant; and (2)

19

that the consecutive sentences reasonably relate to the severity of the offenses committed. *Id*.; *State v. Wilkerson*, 905 S.W.2d 933, 938-39 (Tenn. 1995); *see State v. Robinson*, 146 S.W.3d 469, 524 (Tenn. 2004). In discussing the applicability of the "dangerous offender" category to the Defendant, the trial court stated the following:

> [T]he Court does find that [the Defendant] is a dangerous offender and his behavior indicated little or no regard for human life and that he had no hesitation about committing a crime in which the risk [to] human life is high. . . . When you break into a business at night and you're loaded with guns, with knives. You're prepared to use those weapons to accomplish, to facilitate this crime, you have no hesitation in committing a crime in which the risk [to] human life is high. [The Defendant] and [co-defendant] were prepared to wage war, not only with the owners of this business, but also with police officers, should they be interrupted. . . .[The Defendant] dragged Ms. Ishee. Ms. Ishee could have been run over by a car. She could have been damaged by a car. She could have been shot by this gun that [the Defendant] was reaching for. He slammed a car into a police cruiser, having absolutely no hesitation in injuring those police officers. Had no hesitation in killing or putting those officers out of commission for a long period of time. He fled on foot, hid out in the woods and had no hesitation in attacking the dog or whoever else happened to get to [the Defendant] before Gunner did so he absolutely had no hesitation in committing [ ] crime[s] in which the risk [to] human life was high.

> This Court finds that the circumstances surrounding the commission of this offense are aggravated. I've already put those reasons on the record and will not reiterate those reasons and the Court finds that the length of the sentences are reasonably related to the severity of the offenses for which [the Defendant] was found guilty by a jury and that consecutive sentences are necessary to protect this public from further criminal act[s].

We conclude that the evidence supports the trial court's imposition of consecutive sentences. The evidence proved that the Defendant, who had previously committed similar crimes, entered the Ishees' restaurant without permission early in the morning hours. He and his co-defendant took a television and were carrying it to the Defendant's vehicle when the Ishees arrived. The Defendant and co-defendant made aggressive movements toward the Ishees. In response, Mrs. Ishee grabbed the Defendant around the shoulders in an attempt to detain him until police arrived. The Defendant maneuvered himself into his van and accelerated the van forward, ramming it into a police car while Mrs. Ishee maintained her grasp, her legs partially outside the van. At the time of the impact, two officers were attempting to exit the vehicle and one of the officers was injured due to the impact. The

Defendant fled on foot and hid in Overton Park, and, when canine Officer Gunner attempted to apprehend the Defendant he stabbed Gunner repeatedly in the throat, mouth, and chest, causing life-threatening injuries. Even after a jury found the Defendant guilty beyond a reasonable doubt, the Defendant continued to deny his culpability at the sentencing hearing, essentially claiming he was merely trying to help a friend re-possess a television. This evidence supports the trial court's finding that consecutive sentencing is necessary to protect the public and that the sentence is reasonably related to the seriousness of the offenses committed. The Defendant is not entitled to relief on this issue.

## B. Manner of Service of Sentences

We now turn to the issue of alternative sentencing. Under the 2005 amendments to the Sentencing Reform Act, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (citing T.C.A. § 40-35-102(6) (2006)). Instead, a defendant not within "the parameters of subdivision (5) [of T.C.A. § 40-35-102], and who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." *Id*. (footnote omitted). T.C.A. § 40-35-102(6); 2007 Tenn. Pub. Acts 512. Additionally, we note that a trial court is "not bound" by the advisory sentencing guidelines; rather, it "shall consider " them. T.C.A. § 40-35-102(6) (emphasis added).

A defendant seeking probation bears the burden of "establishing [his] suitability." T.C.A. § 40-35-303(b) (2006). As the Sentencing Commission points out, "even though probation must be automatically considered as a sentencing option for eligible defendants, the defendant is not automatically entitled to probation as a matter of law." T.C.A. § 40-35-303 (2009), Sentencing Comm'n Cmts.

When sentencing the defendant to confinement, a trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

21

T.C.A. § 40-35-103(A)-(C)) (2009). In choosing among possible sentencing alternatives, the trial court should also consider "[t]he potential or lack of potential for the rehabilitation or treatment." T.C.A. § 40-35-103(5); *State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). The trial court may consider a defendant's untruthfulness and lack of candor as they relate to the potential for rehabilitation. *See State v. Nunley*, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999); *see also State v. Bunch*, 646 S.W.2d 158, 160-61 (Tenn. 1983); *State v. Zeolia*, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); *State v. Williamson*, 919 S.W.2d 69, 84 (Tenn. Crim. App. 1995); *Dowdy*, 894 S.W.2d at 305-06.

At the sentencing hearing in this case, the trial court sentenced the Defendant as a Range II, multiple offender to a sentence of forty years, eleven months and twenty-nine days of incarceration. While the Defendant's aggregate sentence is forty years, eleven months and twenty-nine days, none of his individual sentences is more than 10 years, so he is still eligible for probation. *See* T.C.A. § 40-35-303 (2006). The trial court then set out to determine the manner of service and made the following findings:

> This Court is firmly of the opinion that confinement, in this case is necessary for all three factors specified in 40-35-103, that measures less restricted than confinement have been applied unsuccessfully to the Defendant recently. He's been on probation twice before, has violated probation at least once.

> This Court finds that [the Defendant] does not necessarily have a long history of criminal conduct, but his conduct does go back to two different states, Louisiana, and he's now brought this lawlessness to the State of Tennessee. Having been convicted in 1998, convicted in 2000 and he's not committing these offense[s] in Shelby County Tennessee, so he now has [ ] several felony convictions on his history that go back to about the last nine or ten years and this Court also finds that confinement is necessary to avoid depreciating the seriousness of this offense and to serve as deterrence for other folks similarly situated and the Court looks at deterrence under State versus Cooper, 29 S.W.3d, page 1. It's a 2000 Tennessee Supreme Court opinion. There are five factors that the Court has to consider when the Court makes the determination as to whether or not deterrence is appropriate in this case. First factor is whether or not other incidences of this charged offense are increasingly present in this community, in Shelby county, in this jurisdiction, or as a state as a whole. Memphis, Shelby County Tennessee is the second most violent, the second most dangerous metropolitan area in the country . . .and part of that reason is because folks run around in this community with guns, committing crimes with guns, invading houses, invading businesses and

22

these folks are carrying guns because they are prepared to use whatever force necessary to help them accomplish these crimes. [The Defendant] has a history of committing crimes with violence. . . .

Deterrence is particularly suitable in this case because folks in this community are screaming at the police. They're screaming at judges and at prosecutors, "Please do something about folks breaking into houses, breaking into business. Destroying what we've worked for all of our lives, labored for all of our lives. These folks are taking property from us," and in just a matter of minutes, law abiding citizens in this community are having their lives ruined because of thoughtless acts that [the co-defendant] and [the Defendant] and similar folks, [are] committing in this neighborhood.

Second factor is whether or not this crime was a result of an intentional, knowing, or reckless conduct. In all of these offenses, the jury found that [the Defendant's] actions were intentional, were knowing and or were reckless and that applies as far as deterrence. The Court has to find whether or not the defendant's crime has received substantial publicity beyond that normally expected in a typical case and for the record, this case has received a tremendous amount of publicity, not only locally, but regionally. . . . This case has received a lot of publicity and it's not necessarily just because [the Defendant] tried to kill a police dog. [The Defendant] tried to harm other people, dragged a woman a great distance, rammed a police car and hid in a public place that caused the police department to go in with helicopters and other things to try to get [the Defendant] arrested and this case has received and a lot of publicity. . . .

This Court does not find that [the Defendant] is a member of a criminal enterprise . . . so that factor does not apply. The Court does find that the fifth factor does apply, that the defendant has previously engaged in criminal conduct of the same or similar offense for which he has now been found guilty. He's been found guilty once before. Unlawful entry into a business. He's been found guilty of an aggravated, what would amount to an aggravated assault against a police officer in the State of Louisiana, so the Court finds that deterrence is significantly, significantly, an[d] [of] overwhelming importan[ce] in this case.

Based upon its findings under Tennessee Code Annotated section 40-35-103, the trial court denied the Defendant an alternative sentence.

23

The record does not preponderate against the trial court's findings. The Defendant has prior convictions for unlawful entry into a building and assault on an officer, which are similar to his present convictions. The Defendant admitted that one of his previous sentences was probated and subsequently revoked. The Defendant denied his involvement and role in these criminal events and further denied any culpability in his previous charges maintaining that he was merely in the wrong place at the wrong time, which was his basic premise as to the current charges. The Defendant had multiple opportunities to submit to police authority peaceably; however, he chose to continue to engage in criminal conduct endangering the lives of others, expending significant police resources, and seriously injuring a police dog in the line of duty. Thus, the record adequately supports the trial court's findings that confinement is necessary to avoid depreciating the seriousness of the offense, that a need for deterrence exists, and that less restrictive means than confinement have been unsuccessful. We conclude that, in ordering confinement, the trial court considered the pertinent facts of this case and appropriate sentencing principles. As such, its denial of alternative sentencing is presumptively correct. *See* T.C.A. § 40-35-401(d); *Mencer*, 798 S.W.2d at 549. The Defendant is not entitled to relief on this issue.

## C. Cruel and Unusual Punishment

Finally, the Defendant contends that the trial court's imposition of a sentence of forty years, eleven months, and twenty-nine days is so "extreme" that it is cruel and unusual punishment in violation of the Tennessee Constitution. The State responds that the trial court found a rational relationship between the seriousness of all the criminal behavior to the total sentence imposed, and found that the sentence was no greater than that justly deserved by the Defendant's conduct.

Both the Eighth Amendment to the United States Constitution and Article 1, section 16 of the Tennessee Constitution prohibit the infliction of cruel and unusual punishment. U.S. Const. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."); Tenn. Const. art. 1, § 16 ("That excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."). Despite the nearly identical wording of the two provisions, our Supreme Court has consistently afforded a more expansive interpretation to Article One, section sixteen than that afforded to the Eighth Amendment. *See State v. Harris*, 844 S.W.2d 601, 602 (Tenn. 1992). Accordingly, although the United States Supreme Court has held that the Eighth Amendment contains no proportionality guarantee outside of sentencing for a capital offense, *see Rummel v. Estelle*, 445 U.S. 263, 274 (1980) (recognizing that "for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of the sentence actually imposed is purely a matter of legislative prerogative"); *Harmelin v. Michigan*, 501 U.S. 957, 994 (1991) (refusing to extend proportionality review

24

to non-capital offenses), our Supreme Court has concluded that the state constitution provides for the proportionality review of non-capital sentences. *Harris*, 844 S.W.2d at 602. Reviewing courts, however, should grant substantial deference to the broad authority legislatures possess in determining punishments for particular crimes, "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences [will be] exceedingly rare." *See Solem v. Helm*, 463 U.S. 277, 289-90 (1983) (emphasis in original) (*quoting Rummel v. Estelle*, 445 U.S. 263, 272 (1980)).

In *Harris*, the Tennessee Supreme Court adopted a proportionality analysis by which courts initially compare the sentence imposed to the crime committed. *Id*. at 603 (citing Justice Kennedy's concurrence in *Harmelin*, 501 U.S. at 997-1009 (Kennedy, J., concurring in part and concurring in the judgment)). "Unless this threshold comparison leads to an inference of gross disproportionality, the inquiry ends--the sentence is constitutional." *Id*. The factors relevant in determining whether the sentence imposed for an offense raises an inference of gross disproportionality include:

> (1) the nature of the crime, including whether society views the crime as serious or relatively minor and whether the crime is violent or non-violent; (2) the circumstances of the crime, including the culpability of the offender, as reflected by his intent and motive, and the magnitude of the crime; and (3) the existence and nature of any prior felonies if used to enhance the defendant's penalty.

*State v. Smith*, 48 S.W.3d 159, 171 (Tenn. Crim. App. 2000) (citing *Solem v. Helm*, 463 U.S. 277, 290-91 (1983)). "Factors relevant to the harshness of a penalty include the type of penalty imposed and, if a term of imprisonment, the length of the term and the availability of parole or other forms of early release." *Id*.

After examining the Defendant's sentence, as imposed by the trial court, of forty years, eleven months, and twenty-nine days in light of the gravity of his offenses, we hold that no inference of gross disproportionality arises. The Defendant's initial crime of entering the Ishees' family business, with a weapon, to steal a television began a spree of criminal conduct that endangered the lives of the owners of the restaurant, police officers, and a canine officer. The Defendant was given multiple opportunities to surrender to which he refused and continued on a dangerous course of criminal conduct. He rammed his vehicle into a police car while Mrs. Ishee was dragged partially outside his van. Two police officers were attempting to exit their police car when the Defendant accelerated his van into their vehicle, injuring one of the police officers. The Defendant then fled on foot, hiding in a thickly wooded area of Overton Park where he continued to refuse to comply with police authority. When a canine officer was released to apprehend the Defendant, the Defendant repeatedly

stabbed the dog about the face and chest. Even when the Defendant was apprehended by the canine officer, he still refused to submit to police commands to display his hands. The Defendant's conduct, the trial court specifically found, caused the victims mental suffering. The Defendant's crimes in this case were both serious and violent. The Defendant, although initially joined by a co-defendant, was the sole actor in all but one of the multiple crimes he committed that night. Further, the Defendant has prior felony criminal convictions for similar behavior. In our view, a forty year, eleven month and twenty-nine day sentence is not an unconstitutional punishment for these crimes.

### III. Conclusion

Based upon the foregoing reasoning and authority, we affirm the trial court.


_____

ROBERT W. WEDEMEYER, JUDGE